# WHEELING.

Wintz v. Board of Education of Charleston District.

Submitted June 25, 1886.—Decided July 3, 1886.

1. Under sec. 13 of ch. 45 of the Code as amended by ch. 15 of the Acts of 1881, the trustees of a sub-district are compelled to submit the appointment of all teachers to the board of education, if in session, and, if not in session, to the president of the board for approval; and the appointment is not complete without such approval. A discretion is given to the board or its president to either approve or disapprove such appointment; and the board of education or its president can not by *mandamus* be compelled to approve such appointment. (p. 232.)

2. The school-trustees have no power, as individuals, to appoint a teacher for a public school. Such appointment can only be made by the trustees at a meeting, of which all the trustees had notice : and at least two of the trustees must concur in such appointment. (p. 232.)

*Knight & Couch* for plaintiff in error.

*Kennedy & Littlepage* and *Watts & Camden* for defendant in error.

JOHNSON, PRESIDENT:

Philip Wintz filed his petition in the circuit court of Kanawha county, praying a *mandamus* to compel the board of education of Charleston district to approve a contract by the trustees employing a teacher for one of the sub-districts in said district.    The petition is as follows:

"*To the Honorable F. A. Guthrie, judge of the circuit court of Kanawha county, West Virginia:*

"Your petitioner, Philip Wintz, humbly represents unto your Honor, that he was on or about June 26, 1885, regularly and duly examined by the board of examiners of Kanawha county as a teacher to teach public-school in said county as required by law, and obtained from said board a No. 1 certificate of qualification as such teacher of public school; that having obtained and holding such certificate as aforesaid, he applied to John Scruggs and James P. Wintz, two trustees of sub-district No. 2, in the district of Charleston, duly appointed and qualified as such trustees by and before the board of education of the district of Charleston, in the county of Kanawha, and entered into and made a contract, subject to the approval of said the board of education of the district of Charleston, in the county of Kanawha, with said trustees to teach public school in said sub-district No. 2 for the term of six months, commencing on the 7th day of September, 1885, for the sum of $40.00 per month; that your petitioner thereupon, on the first Saturday in September, 1885, presented and submitted for approval said contract to the said the board of education of the district of Charleston, in the county of Kanawha, then in session and sitting for the transaction of that and all other business pertaining to the office and duties of said the board of education of the district of Charleston, in the county of Kanawha, as such, and whose duty it was and is to approve said contract, it having been signed by said two trustees and being in all respects according to law; that said the board of education of the district of Charleston, in the county of Kanawha, then refused and still refuses to approve said contract, which under the law it was and is its duty to do, to the great injury and damage of your petitioner.

"Your petitioner therefore prays, that your Honor do grant

unto him the writ ot *mandamus*, returnable forthwith, against said the board of education of the district of Charleston, in the county of Kanawha, commanding it forthwith to approve said contract or show good cause to the contrary.

"PHILIP WINTZ,

"*By Counsel..*"

On December 12, 1885, the court ordered the following alternative writ of *mandamus* to issue in accordance with the prayer of the petition :

" STATE OF WEST VIRGINIA,

"*To the board of education of the district of Charleston in the county of Kanawha :*

" Whereas Philip Wintz has filed his petition verified by affidavit in our circuit court of Kanawha showing that he was on or about June 26, 1885, regularly and duly examined by the board of examiners of Kanawha county as a teacher to teach public school in said county as required by law, and obtained from said board a No. 1 certificate of qualification as such teacher of public schools; that having obtained and holding such certificate as aforesaid, he applied to John Scruggs and James P. Wintz, two trustees of sub-district No. 2, in the district of Charleston, duly appointed and qualified as such trustees by and before the board of education of the district of Charleston in the county of Kanawha and entered into and made a contract, subject to the approval of the said board of education of the district of Charleston in the county of Kanawha, with said teacher to teach public school in said sub-district No. 2 for the term of six months commencing on December 7, 1885, for the sum of $40.00 per month; that said petitioner thereupon, on the first Saturday in September, 1885, presented and submitted for approval said contract to the said board of education of the district of Charleston in the county of Kanawha then in session and sitting for the transaction of that and all other business pertaining to the office and duties of said the board of education of the district of Charleston in the county of Kanawha as such, and whose duty it was and is to approve said contract, it having been signed by said two trustees, and being in all respects according to law ; that said the board of education of the district of Charleston in the county of Ka-

nawha then refused and still refuses to approve said contract, which under the law it was and is its duty to do, to the great injury and damage of said petitioner.

"Whereupon you, the said the board of education of the district of Charleston in the county of Kanawha, are commanded forthwith to approve said contract according to law, or in default thereof, that you forthwith make known to our said circuit court now sitting at the court house of Kanawha county why you have not done the same, returning then and there this our writ.

"Witness, C. B. Smith, clerk of our said court, at the court house of said county, December 12, 1882, and in the twenty-third year of the State.

"C. B. SMITH, *Clerk.*"

On December 22, 1885, the defendant appeared by counsel and moved to quash the said alternative writ, which motion the court overruled; thereupon the defendant filed its return to said writ, to which return the petitioner demurred, which demurrer was overruled, and the petitioner replied generally to the said return. A jury was waived, and the case was submitted to the court in lieu of a jury, and the court issued a a peremptory writ of *mandamus* commanding said board of education to approve said contract. To this judgment the defendant obtained a writ of error.

The first question to be considered is : Should the motion to quash the alternative writ have been sustained ? Sec. 13, of ch. 45 of the Code provides:

"The trustees of every sub-district shall have charge of the schools therein, and shall appoint the teachers of such schools. Such appointment shall be in writing, according to the form furnished by the State Superintendent of Free Schools, and shall be submitted to the board of education, or to the president thereof when the board is not in session, for approval, and when approved by either it shall be filed within one week thereafter with the secretary of the board of education. Any teacher so appointed, may be removed by the trustees, or by the board of education for incompetency, neglect of duty, intemperance, profanity, cruelty or immorality. The trustees shall exclude from any school under their charge a person having contagious, or infectious disease, and they may suspend or ex-

pel any scholar found guilty of disorderly, refractory, indecent or immoral conduct, and may refuse to admit such scholar again to the school, unless satisfied that he will properly conduct himself thereafter. But the trustees shall take no action or proceeding, relating to the appointment or removal of teachers, or the supervision, or expulsion of any scholar from school, unless at a meeting of which all the trustees shall have had notice, and where at least two of their number shall be present and concur in such action or proceeding, and their action in each particular shall be subject to the revision and correction of the board of education, upon complaint in writing, of a majority of the patrons of the school residing within the sub-district in which such action has been taken Any trustee may, for good cause shown, be removed from office by the board of education, upon five days' notice, in writing of the cause alleged for his removal, and of the time and place the board will take action thereon. Whenever at the end of any school month, the daily average attendance for that month has been less than thirty-five per cent. of the whole number of pupils enumerated in the sub-district, the trustees may dismiss the teacher, and discontinue the school, unless otherwise directed by the board of education; and no high school shall be continued, if at the end of any school month it has not had the average daily attendance of twenty-five scholars."

Section 9 provides : "The board of education shall have general control and supervision of the schools and school-interests of their districts." ·

Section 10 provides : "The board of education shall cause to be kept in every sub-district of their district, by a teacher or teachers of competent ability, temperate habits and good morals a sufficient number of primary schools for the instruction of the persons entitled to attend the same, and should the trustees of any sub-district, neglect or fail to employ a teacher for their sub-district, upon complaint thereof it shall be the duty of the board of education to do so."

Section 12 provides: "The trustees shall be under the supervison and control of the board of education, and in all cases the action of the trustees shall be subject to the revision and correction of the board of education, on the motion

of any member thereof, or upon the complaint in writing of any three tax-payers of their sub-district."

It is manifest from these sections of the school-law, that the legislature committed the cause of public education in every school-district of the State to the supervision and control of the boards of education respectively in such districts. While the trustees of the sub-districts were empowered to employ the teachers, yet such employment never could be complete without the approval of the board of education, if in session, or of the president of the board, when not in session. The law-making power did not intend, that any teacher should be employed without the approval of the board of education or of its president. Such "approval" is absolutely required, before any such employment is complete. The language of the statute is too clear for argument, that the teacher is "not appointed" without such "approval."

For the wisest purpose the legislature gave to the board of education a positive veto-power upon the employment of teachers by the trustees. The trustees might appoint immoral persons, whose immorality was well known to the members of the board. To avoid any scandal, which might be caused by giving a reason for their disapproval, the State lodges in them the discretion to disapprove without being required to give any reason therefor. To say, that the board can by *mandamus* be compelled to approve the appointment of a teacher, is to say that they have not the power to disapprove, which in this instance is to say, that the legislative requirement, that they should approve the appointment of a teacher, before his appointment is complete, is a useless requirement.

There is another fatal defect in the alternative writ, even if a *mandamus* could issue to compel the board of education to approve the appointment of a teacher. Sec. 13 declares that "the trustees shall take no action or proceeding relating to the appointment  *  *  of teachers  *  *  unless at a meeting, of which all the trustees shall have had notice, and when at least two of their number shall be present and concur in such action or proceeding." The law is mandatory and prevents the individual members of the trustees from appointing a teacher. They can not make such appointment as

individuals, but must meet together and make the appointment at a meeting, of which all the members have had notice. This is another safeguard, which was intended to prevent the appointment of improper teachers. An improper person could much more easily procure the appointment, if he might approach the trustees separately and urge his case. Having procured the signature of one to his appointment he would be more likely to procure another; he might use very different arguments and present different reasons to the second from those presented to the first. The alternative writ does not relate any such necessary fact. It says "he applied," not to the trustees, naming them, who were assembled in a meeting after notice given of such meeting, but "he applied to John Scruggs and James P. Wintz, two trustees of sub-district No. 2," &c. If there had been no other, for that reason alone the writ should have been quashed. And the same defect appearing in the petition, no *prima facie* case was shown, and the court ought not to have directed the alternative writ to issue.

The judgment of the circuit court of Kanawha county is reversed, and the alternative writ of *mandamus* is here quashed.

REVERSED.