# CHARLESTON.

STATE *ex rel* P. H. GOSHORN *v.* W. S. JOHNSON,
*State Treasurer*

(No. 5722)

Submitted June 8, 1926.   Decided November 23, 1926.

MANDAMUS—

>   One seeking relief by mandamus must show a clear legal right to the remedy.

Original Jurisdiction in Mandamus.

P. H. Goshorn, relator against W. S. Johnson, Treasurer, State of West Virginia.

*Writ refused.*

*England & Ritchie,* for relator.
*T. C. Townsend,* for respondent.

LITZ, PRESIDENT:

The relator, P. H. Goshorn, seeks a peremptory writ of mandamus compelling the respondent W. S. Johnson, State Treasurer, to honor a warrant in the sum of $200.00 drawn by John C. Bond, as auditor, on a State fund designated "Salary for clerk hire to Board of Finance", for alleged services rendered by the relator in behalf of the Board of Finance during the month of February, 1925.

Chapter 8, Acts of the Legislature 1925, known as "the new State depository law", was enacted for the purpose (stated in the enacting clause) of "amending and re-enacting sections one, two and three of chapter Seventeen of Barnes' Code of one thousand nine hundred and eighteen, and adding sections one-*a*, one-*b*, one-*c*, two-*a*, two-*b*, three-*a*, and three-*b* relating to depository banks; requiring the board of public works to designate a sufficient number of banks as inactive depositories and a number as active depositories in each senatorial district; providing a minimum rate of interest on deposits to be charged active and inactive depositories; reducing the minimum amount of depository bonds from fifty

thousand dollars to ten thousand dollars; prohibiting depositories from accepting deposits of State funds for an amount greater than their combined capital stock and surplus; providing a prompt and efficient method of stopping deposits being made in an insolvent depository, and for removing funds already on deposit in same without advertising its financial condition; providing that all moneys collected for or on behalf of the State shall be turned over to the State Treasurer and by him promptly paid into the State Treasury; requiring the State Treasurer to keep at all times the inactive funds in the treasury distributed among the fifty-five counties upon a basis of the total assessment of all property in each county; providing a method for making deposits in State depositories of moneys received outside of the State; providing for a board of finance; prohibiting the treasurer from depositing State funds in any depository in which he is financially interested".

Section 2-*b* of the act, creating, and prescribing the duties of, the Board of Finance, follows:

"There is hereby created a board of finance, composed of the governor, auditor and treasurer, of which the governor shall be chairman and the auditor shall be secretary; said board shall have the authority to determine the proportion of all State funds that shall be treated as active funds and shall have the authority to determine the basis upon which the inactive funds due any county shall be distributed among its inactive depositories and any other rules and regulations that it may deem necessary or expedient to protect the interest of the State, its depositories and taxpayers. The treasurer shall furnish said board of finance, not later than the tenth of each month, a statement showing the balances on the last day of the preceding month in each active and inactive bank."

The budget bill for 1926-1927, under appropriation for the auditor's office, provides $2,400 each year as "salary of clerk to Board of Finance".

The petition alleges that during the months of July and August, 1925, the relator performed "certain clerical" services for the Board of Finance at a salary of $200 per month under employment by John C. Bond, State auditor and ex-officio secretary of said Board, for which services he received two warrants in the sum of $200 each, drawn by said Bond, as auditor, upon, and honored by, respondent. The petition further alleges that the relator was also employed by said Bond to perform additional clerical services for the Board of Finance during the month of February, 1926, and for these services the said Bond, as auditor, drew his warrant upon respondent, payable to relator in the amount of $200, but that the respondent has refused to honor the same.

The return of respondent denies the authority of John C. Bond, as secretary of the Board of Finance, to employ the relator on behalf of the Board, and further denies that relator in fact performed any service under the alleged employment. The return also avers that the warrants drawn by Bond in favor of the relator for alleged services performed by him for the Board during the months of July and August, 1925, had been inadvertently approved by respondent without observing the fund out of which they were payable, because the relator for a long time prior thereto had been employed as a clerk in the office of the auditor, receiving a regular monthly salary out of the appropriation for clerk hire of said office. The return further avers that similar warrants were drawn by the auditor in favor of relator for alleged services performed by him on behalf of the Board of Finance during the months of September and October, 1925, which respondent refused to honor, on the ground, concurred in by a majority of the Board, that there was no necessity at the time for the employment of any clerical assistance and that none was in fact rendered by the relator.

The position of the relator is that the legislature intended, by including "Salary of clerk to Board of Finance" as part of the appropriation for the auditor's office under the budget bill, to deprive the Board of Finance of its right to determine the necessity of employing clerical assistance and vest in the

auditor, as ex-officio secretary of the Board, sole and absolute discretion in the employment of such assistance and the use of the special fund appropriated for the purpose. We do not think that the premise justifies the conclusion. The legislature certainly did not intend that the secretary of the Board should control in matters obviously requiring the action of at least a majority of the Board, even to the extent of misusing the fund appropriated for the benefit of the Board. It will be observed that the only specific duty required to be performed by any member of the Board of Finance is placed upon the State Treasurer, who shall furnish the Board not later than the tenth of each month a statement showing the balances on the last of the preceding month in each active and inactive depository bank.

As the necessity for the alleged employment of relator by the secretary of the Board against the protest of a majority of its members has not been shown, nor that the relator under such employment performed any specific service, he is not entitled to relief by mandamus. One seeking relief by mandamus must show a clear legal right to the remedy. *Hutton* v. *Holt,* 52 W. Va. 672; *State ex rel. Stephenson* v. *Board of Education,* 97 W. Va. 431; *State ex rel. Blackwood* v. *Brast,* 98 W. Va. 596.

*Writ refused.*