## Fox v. Petty.

(Decided June 3, 1930.)

PETER; LEE, TABB & KRIEGER & HEYBURN for appellant.

WALTER S. LAPP for appellee.

Opinion of the Court by Judge Clay—Affirming.

Hubbard R. Petty, sheriff of Jefferson county, appointed Fred Barringer one of his deputies. Henry I. Fox, judge of the Jefferson county court, refused to

approve the appointment, and Petty applied to the Jefferson circuit court for a writ of mandamus, which was granted. Judge Fox appeals.

The petition as amended alleges in appropriate terms the appointment of Barringer, and appellant's refusal to approve. It further alleges that Barringer had had experience in the office of appellee's predecessor, that he was a man of good moral habits, and fully qualified to act as deputy sheriff. It also charges that appellant arbitrarily refused to approve the appointment; that no justifiable reason was assigned for such refusal; and that no complaint was made that Barringer was not a person of good moral character and properly equipped to exercise the duties of the office. In the first paragraph of his answer appellant denied that his refusal was arbitrary or without justifiable reason. The second paragraph of the answer is as follows:

"Defendant, Henry I. Fox, for further answer to plaintiff's petition as amended, states that on or about January 4th, 1930, two days before plaintiff's term of office as sheriff of Jefferson county began, plaintiff furnished him, as County Judge of Jefferson county, with a list of prospective deputies and that at said time he was informed that, prior to the August Primary, 1929, when the plaintiff was a candidate for the office of Sheriff of Jefferson county, the plaintiff had entered into an agreement with one Chesley H. Searcy, to permit said Searcy to name ten of the plaintiff's deputies in the event that he was elected Sheriff of Jefferson County, and in consideration for which said Searcy had agreed to support him in his race for the nomination of Sheriff of Jefferson county and that the names of ten prospective deputies had been chosen by said Searcy, and that plaintiff was presenting them in order to carry out said agreement as outlined above.

"Defendant states that, as soon as he saw the plaintiff at the first opportunity presented, he asked the plaintiff as to the truth of said information, and that the plaintiff admitted to him that said agreement and contract had been made by him.

"Defendant states that he immediately thereafter notified the plaintiff that he would not be a party to said agreement or contract, and that he as Judge of the County Court of Jefferson county

would refuse to swear them in, and he now alleges that said contract, above set forth, was entered in between the plaintiff herein and said Chesley H. Searcy, and that said list of ten names was presented by the plaintiff in an effort to carry out his part of said contract.

"Defendant states that on said list was the name of Fred Barringer, who is the same Fred Barringer, the approval of whose appointment thereafter was requested by plaintiff on or about the date set up in plaintiff's petition, to secure the approval of whose appointment this suit for a writ of mandamus has been filed, and defendant states that said Fred Barringer was chosen by said Chesley H. Searcy for said position of deputy sheriff as a part of the contract and agreement set out above, and that the plaintiff has again presented his name at the times mentioned in his petition for the purpose of carrying out said contract and agreement.

"Defendant states that said above described contract and agreement, whereby the plaintiff gave to said Chesley H. Searcy, the right to select and name ten of the deputies in the plaintiff's office, provided the plaintiff was elected to said office, was illegal, corrupt and void, contrary to public policy, contrary to good morals and in contravention of section 3740 of the Kentucky Statutes, which reads as follows:

" 'Office not to be sold or farmed: Penalty for.—No office or post of profit, trust or honor under this commonwealth, whether civil or military, legislative, executive, ministerial or judicial, nor the deputation thereof, in whole or in part, shall be sold or let to farm by any person holding or expecting to hold the same. Such person so selling or letting, and the person so buying or receiving the letting, or with whose knowledge the same has been bought for him by another, shall be disqualified from holding such office or post, or the deputation thereof, and, upon conviction, shall be expelled therefrom.'

"Defendant states that said contract or agreement entered into between the plaintiff herein and said Chesley H. Searcy was unlawful and in contravention of section 1565b-3 of the Kentucky Statutes known as the Corrupt Practice Act, which prohibits

any contract or agreement between any person who is a candidate and any other person whereby said candidate for office promises anything of value, either directly or indirectly, in consideration for the support of said candidate by the other person.

"Defendant further states that the plaintiff did not comply with section 1565b-4 of the Kentucky Statutes, known as the Corrupt Practice Act, in that he did not comply with the requirement of said section and file a statement of said contract, agreement and promise on the 15th day, or any day, before the making of such nomination, with the officer with whom his nomination papers were required to be filed, or with the Chairman of the Board of Election Commissioners, after said election, or with the County Clerk of said County.

"Defendant states that the presentation of the name of said Fred Barringer was an effort upon the part of said plaintiff to carry out said illegal, corrupt and void contract, and that he as Judge of the County Court of Jefferson County, has refused for the reasons outlined to approve said appointment, and to swear in said Fred Barringer, and that he, as Judge of the County Court of Jefferson County, will continue to so refuse unless ordered by a court of competent jurisdiction to approve of such appointment."

Petty's demurrer to this paragraph of the answer was sustained, and the only question for determination is whether the facts pleaded are sufficient to justify appellant's refusal to approve the appointment.

Briefly stated, the grounds are these: The alleged agreement between Petty and Searcy was contrary to public policy, in contravention of section 3740, Kentucky Statutes, prohibiting the sale or farming of an office, and of section 1565b-3, Kentucky Statutes, relating to corrupt practices; also that appellee violated section 1565b-4, Kentucky Statutes, in that he failed to file a statement of the contract before and after his nomination for the office of sheriff. We have no difficulty in reaching the conclusion that the alleged agreement was not a sale or farming of the office within the purview of section 3740, Kentucky Statutes. Commonwealth v. Sheeran, 145 Ky. 361, 140 S. W. 568, 37 L. R. A. (N. S.) 289. Whether it contravenes section 1565b-3, Kentucky

Statutes, and whether Petty's failure to file a statement of the alleged agreement before and after the primary was a violation of section 1565b-4, Kentucky Statutes, we need not determine. The only penalties attached to a violation of the Corrupt Practice Act are a loss of office in case of contest, and punishment by fine. Where there has been no contest, the offending candidate may not be denied the right to perform the duties of his office.

However, there is no escape from the conclusion that the alleged contract is contrary to public policy, and therefore void. A public officer authorized and empowered to select his own deputies cannot contract away and surrender this power to another in consideration of political support. A contract contrary to public policy will not be enforced, but the courts will leave the parties where they have placed themselves. Kentucky Association of Highway Contractors v. Williams, 213 Ky. 167, 280 S. W. 937, 45 A. L. R. 544. Therefore, if the case were one where Petty was in court seeking to require Searcy to support him in his race for the nomination for the office of sheriff, or Searcy was seeking to require Petty to make an appointment pursuant to the agreement neither would be entitled to any relief. But that is not the case. Petty is not seeking the enforcement of the contract against Searcy. Nor is he here relying on the contract and asking appellant to approve the appointment for the purpose of carrying out the contract. The case is simply one where the deputy has been selected and approval has been withheld, not on the ground that the deputy is not qualified to hold the office, but on the sole ground that his appointment was made pursuant to a contract contrary to public policy. In the circumstances we are not called upon to enforce the agreement and merely saying that is the case cannot change the facts. Our sole function is to decide whether the county court, charged with the duty of approving appointments, may look beyond the qualifications of the appointee and refuse to approve for the reason stated. The statute (section 4560, Kentucky Statutes), which has been in force from an early date, reads as follows:

"Every sheriff may, by and with the approval of the county court, appoint his own deputies, and may revoke the appointment at his pleasure. Before any deputy shall proceed to execute the duties of his

office he shall take the oath required to be taken by the sheriff.''

In the case of Day v. Justices of Fleming County Court, 3 B. Mon. 198, it was recognized that a writ of mandamus was the appropriate remedy where the county court refused to approve the appointment of a deputy sheriff. In deciding that the writ in that case was properly denied, the court said:

> ''Though the Sheriff possesses the unquestionable common law power to appoint his own deputies, and to remove them. at pleasure, it is his duty to appoint honest and competent persons, and the public is interested in his faithful execution of this trust. The power was reposed, not for his. individual benefit, but for the public good, and the County Court Justices, before whom his deputies are required to take the oaths of office, must be admitted to possess some discretion in guarding the public against a glaring and reckless abuse of this power.
> ''It cannot be admitted that if the Sheriff should appoint a peculator and extortioner, a forger or a felon to office, that the County Court would be bound to administer to him the oaths of office, and thereby to qualify, license, and send him forth, clothed with the habiliments of office, to prey upon the public; yet if they have no discretion on this subject, to all such, should such be appointed they might be bound to administer the oath.''

In the more recent case of Applegate v. Applegate, 4 Metc. 236, it was held that the right of approval, and implied right of disapproval, of the appointment of a deputy by the sheriff, conferred by law on the county court, belongs to the executive and not to the judicial power of the court, and that mandamus was an appropriate remedy whereby the county court may be compelled to show cause why it refused to approve and qualify a deputy appointed by the sheriff. In the case of Dassey, County Judge, v. Sanders, Sheriff, 33 S. W. 193, 17 Ky. Law Rep. 972, the court again recognized the rule that for good cause the county court may withhold its approval, but if withheld without such cause the writ lies. In that case the deputy had been indicted for felonies five years before his appointment. His certificate

as a teacher had been revoked on the ground of immoral conduct, and he had abandoned two wives. It was held that these facts did not authorize the county court to decline to approve his appointment when at the time of his appointment and for several years prior thereto he had shown himself a capable, honest, and courageous public officer, and friends and foes alike testified as to his present good character. The rule deducible from these cases is that, while the county court has some discretion in approving the appointment of a deputy sheriff, that discretion is confined to the qualifications of the appointee. If the appointee be immoral, dishonest, incompetent, or otherwise disqualified to perform the duties of the office, the county court may withhold its approval. On the other hand, if the appointee is of good moral character, and capable of performing the duties of the office, approval cannot be withheld. It is admitted that Barringer is a man of good moral character and qualified in every way to perform the duties of the office. He is not a party to the agreement, and it is not even claimed that he knew of the agreement. In the circumstances there is no escape from the conclusion that the county court cannot ignore his qualifications and withhold approval of the appointment on the sole ground that the appointment was made pursuant to an invalid contract, not involving any moral turpitude on his part. It follows that the demurrer to the second paragraph of the answer was properly sustained, and that the court did not err in awarding the writ.

Judgment affirmed.

Whole court sitting.

Chief Justice Thomas and Judges Logan and Rees dissenting.

### DISSENTING OPINION BY CHIEF JUSTICE THOMAS.

The answer in this case denied that the defendant and appellant, Henry I. Fox, as county judge of Jefferson county, capriciously or arbitrarily refused to approve the appointment by plaintiff and appellee, Hubbard R. Petty, of Fred Barringer, as one of plaintiff's deputy sheriffs for Jefferson county, and in another paragraph it was alleged that plaintiff and others were candidates for the Republican nomination for the office of sheriff of Jefferson county in the August, 1929, primary election, and that prior thereto plaintiff entered into an agreement with one Searcy, a prominent and politically influential

citizen of Jefferson county, whereby, in consideration of Searcy's support for the nomination of plaintiff, it was agreed that he (Searcy) might name ten of plaintiff's deputy sheriffs in case he should receive the nomination and be finally elected. The answer further alleged that defendant had been informed of that agreement before he declined to approve the nomination of Barringer or to swear him in as deputy sheriff, and that he approached plaintiff on the subject and asked him "as to the truth of said information and that the plaintiff admitted to him that said agreement and contract had been made by him." It was further alleged in the answer that Barringer was one of the ten deputies selected and furnished to plaintiff by Searcy in compliance with the pleaded agreement, and that such fact was also admitted by plaintiff. However, the averments of such express admissions by plaintiff were wholly unnecessary, since the demurrer to the pleading of *the fact* as to such an agreement admits its existence without the further allegation that plaintiff also expressly admitted it before the litigation was commenced.

It is conceded in the opinion that such an agreement is against public policy and nonenforceable by the courts, and which is most emphatically true, as is demonstrated by the opinions of all courts and text-writers dealing with the question, some of which are Kentucky Association Highway Contractors v. Williams, 213 Ky. 167, 280 S. W. 937, 939, 45 A. L. R. 544, with authorities therein cited; 13 C. J. 438, sec. 375; Owsley v. Hill, Jr., 210 Ky. 285, 275 S. W. 797; Van Meter v. Burns, 176 Ky. 153, 195 S. W. 470; Martin v. Francis, 173 Ky. 529, 191 S. W. 259, 260 L. R. A. 1918F 966, Ann. Cas. 1918E 289; Campbell v. Offutt, 151 Ky. 231, 151 S. W. 403; Commonwealth v. Sheeran, 145 Ky. 361, 140 S. W. 568, 37 L. R. A. (N. S.) 289; and Dassey, County Judge, v. Sanders, 33 S. W. 193, 17 Ky. Law Rep. 972. See also annotation to the case of Walden v. Fallis, 45 A. L. R. 1396, in which there is collected a number of cases from foreign courts, and they are in complete accord with our cited opinions in classifying agreements interfering with the unhampered freedom of elections or appointments of persons to office as being at the head of the vicious list of contracts against public policy. "The test," as pointed out in the 213 Ky. case, "is the evil tendency of the contract and not its actual injury to the public in a particular

instance . . . and that their validity is determined by their general tendency at the time they are made, and, if such tendency is opposed to the interest of the public, the contract will be invalid, 'even though the intent of the parties was good, and no injury to the public would result in the particular case.' "

Some of the cases exclusively deal with vicious agreements and contracts having a tendency to interfere with the freedom of elections and appointments to office, an outstanding one of which is the case of Martin v. Francis, supra, from this court, and in which an agreement similar in all respects to the one here involved was denounced "because they (such contracts) impose on a public officer the obligation to appoint an assistant or deputy without reference to his fitness or qualifications for the place, and only for the reason that it was a part of an agreement entered into, not for the benefit of the public, but pursuant to a corrupt bargain detrimental to the public." The law casts upon a sheriff, after taking his oath of office, the right and duty to appoint his own deputies in the performance of which he is as much bound by his oath as he is in the performance of any other official act. But if he has previously bargained away that right, he has thereby vested in his bargainee the right to perform such an official act without even the restraining influence of an admonishing oath to secure its proper exercise, and, under the authorities, supra, such a contract is nevertheless vicious although "no injury to the public would result in the particular case," or that "the intent of the parties was good," and which destroys the efficacy of the admitted fact, that Barringer was competent to fill the office of deputy sheriff of Jefferson county, to relieve the agreement of its viciousness and of the duty of the court to lend no aid to its enforcement.

It is conceded in the opinion of the court that the agreement here involved would not be enforced as between defendant and Searcy, the immediate parties to it; but it is held that, since Searcy is not a party to this litigation, the court will not refuse to interfere with its specific performance, but will indirectly compel it by mandatorily requiring plaintiff, as county judge, to perform an official act, which under the law is requisite and necessary to complete the full performance and successful carrying out of the admittedly unlawful agreement. A simple illustration will, as I think, suffice to demonstrate the fallacy of that position. According to it, if

defendant was himself a party to the unlawful agreement, i. e., if he had also agreed at the same time with Searcy and plaintiff that he would approve such deputies as Searcy would designate, but afterwards relented and refused to perform his part of the agreement, then he would not be required by this mandamus proceeding to do so; but, inasmuch as he was not a party to the agreement, but discovered it before he was called upon to give his approval to the appointment and to administer the oath to the appointee, which are the final acts for the specific execution of the agreement, he may be compelled to do so and to thereby foist upon the people an officer or officers whose selection was rooted in, and was the outgrowth of, the most vicious type of anti-public policy transactions.

Suppose that, instead of support and influence in the primary election as a consideration for the right to name ten of plaintiff's deputies, he (Searcy) had agreed to and had paid plaintiff a monetary consideration for the right to so name ten of his deputies; could it be said that the agreement would be any less vicious, and would the court in that event compel defendant to approve such a bribing contract by compelling him to do and perform an official act as a condition precedent to the specific execution of such an agreement? I think not.

But it is said that in the cases cited in the opinion from this court it was held, in substance, that the county judge in giving his approval to the appointment of a deputy sheriff is confined to the exercise of a reasonable discretion which may not extend beyond the moral and other qualifications of the tendered appointee, and which was all that was necessary to be said and determined in those cases, since no such public policy question as we have here was presented in either of them. But when present it injects an entirely different question into the case, since it is then *not* one where the court will merely leave the *parties* where it finds them and thereby punish them, so to speak, by refusing or declining to aid in the performance of the vicious agreement affecting only themselves personally. The agreement pleaded in the answer and admitted by the demurrer in this case has a tendency to obstruct and corruptly contaminate good government, including the proper enforcement of the laws of the land and the upright discharge of official duties, and it is pre-

eminently a question in which the *public at large* is most vitally interested; the consequences attendant upon the execution of the agreement not being confined alone to the parties to it. I am therefore clearly convinced that in cases of this kind it is the duty of a court to refuse to extend its power to coerce a governmental agency or officer to perform an official act required of him to complete and carry into full execution the appointment of an officer pursuant to such an unlawful and vicious agreement. In other words, it is my position that the courts should decree the taking of no step necessary to the execution of such agreements but, on the contrary, to withhold its aid *all along the line,* regardless of the fact that the person sought to be coerced was or not a party to the offending agreement; but the statute in this case makes the defendant a necessary one for its complete fulfillment.

This litigation is analogous to an action for specific performance, which ordinarily affects only the *personal* or private rights of the nominal parties to the contract sught to be performed, but which latter, as we have above pointed out, is not the extent of the vice in this case, since the public is the one most vitally affected by the enforcement of the agreement here involved. Appyling the principles of the opinion, and personifying the law, we have it saying to one of the parties to the unlawful agreement who is seeking its enforced performance: "I would not enforce this agreement for you in an action between you and the other party to it. Yet I will accomplish the same result for you by compelling another (the county judge in this case) to approve the unlawful agreement and thereby require him to perform an act which I myself would refuse if I was the only one with authority to enforce performance."

We are taught that what one does by another he does himself, and in the illustration just given the court, through the instrumentality of the county judge, does that which it would decline to do itself. The law does not tolerate, or indulge in, subterfuge; nor does it have for its foundation any such specious reasoning as I concede the opinion to employ. Rather does it look to the *substance* and not the shadow, which if done in this case would require that, instead of looking to the shadow (i. e., that the defendant is not a party to the contract and that his discretion is limited only to personal qualifica-

tions of the appointee), the substance should be looked to and the court should decline all aid, directly or indirectly, in furtherance of the performance of the agreement as made between plaintiff and Searcy, and especially so when one of the parties to it is seeking such specific relief.

I have so far dealt with the case upon the theory that plaintiff himself made the appointment of Barringer and that his request of defendant was such as he could make under the statute, and enforce if wrongfully refused; but I am not altogether convinced whether under the admitted facts that conclusion is correct. The defendant as county judge of Jefferson county was and is not required under the statute (Ky. Stats., sec. 4560) to approve the appointment of a deputy sheriff made by any *other* person than the sheriff, and according to the facts, which the demurrer to the answer admits, the appointment of Barringer in this case was not made by plaintiff, the sheriff of Jefferson county, Ky., but was made by Mr. Searcy, pursuant to the unlawful agreement entered into for that purpose, and the sheriff, who was a party to that agreement, in requesting defendant to approve the appointment of Barringer, was only conveying to defendant his previous private appointment by Searcy. In other words, plaintiff under the alleged and admitted agreement was but the agent of Searcy to bring about the approval of his selection of Barringer as one of the deputy sheriffs in and for Jefferson county, and if that be true, surely the opinion of the majority could not be sustained even if the other reasons against it herein discussed were insufficient for that purpose.

In writing this dissenting opinion I have merely outlined my reasons for doing so and which will not be extended by further elaboration. I regret my inability to agree with the majority of my associates, but the importance of the question and my firm conviction that they are in error compel me to disagree with them and to thus briefly register my reasons therefor. I am authorized to say that Judges Logan and Rees join in the views herein expressed, and in this dissent.