RONALD L. HOCKMAN, SHERIFF, *et al.*

*v.*

THE COUNTY COURT OF TUCKER COUNTY

(No. 10562)

Submitted March 3, 1953.    Decided March 24, 1953.

*Brown* and *Higginbotham, D. E. Cuppett, Thomas,* for petitioners.

*Bonn Brown,* for defendant.

HAYMOND, PRESIDENT:

This is an original proceeding in mandamus in which the petitioners, Ronald L. Hockman, sheriff of Tucker County, West Virginia, and Charles A. Sweringen seek a writ to compel the defendant, the County Court of Tucker County, to confirm an appointment by the petitioner Hockman, as sheriff, of the petitioner Sweringen to the office of deputy sheriff of that county. Upon the fil-

ing of the petition on February 10, 1953, a rule was awarded by this Court returnable February 24, 1953. On the day on which the rule was returnable the defendant filed its demurrer and its answer to the petition and this proceeding was continued until March 3, 1953, to permit the parties to offer evidence in the form of depositions relating to certain disputed questions of fact raised by the petition and the answer. On March 3, 1953, depositions were filed and, upon the petition, the demurrer, the answer, the depositions and their exhibits, the written briefs, and the oral arguments in behalf of the respective parties this proceeding was submitted for decision.

At the general election in November, 1952, the petitioner Hockman, the Democratic candidate for the office of sheriff of Tucker County, was duly elected to that office for the four year term beginning January 1, 1953. After having offered an appointment to the office of deputy sheriff of the county to four different members of the Democratic party, each of whom declined to accept it, the petitioner Hockman, on December 27, 1953, appointed the petitioner Sweringen to that office, the salary of which is $150.00 per month. He accepted the appointment, executed bond with corporate surety in the penalty of $5,000.00, entered upon the performance of his duties as deputy sheriff on Janaury 1, 1953, and is continuing to act as such at this time. At the time of his appointment Sweringen was registered as a Republican voter of Tucker County but immediately after he received the appointment he caused himself to be registered as an independent voter.

On January 7, 1953, the defendant, the County Court of Tucker County, met in regular session, but on that day no record action was taken by it in connection with the appointment of the petitioner Sweringen as deputy sheriff. The session of January 7, 1953, was adjourned until January 14, 1953, and on that day, according to the minutes of the meeting then held, a member of the

court moved that the appointment of Sweringen as deputy sheriff be approved. The motion, not having been seconded, was not considered or adopted and no action was taken to approve the bond which had been presented by Sweringen.

At a special session of the county court, held January 24, 1953, for the stated purpose of considering the appointment of Sweringen as deputy sheriff and transacting any other proper business, a motion to disapprove the appointment was adopted by a two to one vote of the members and a motion to pay the salary of Sweringen to and including January 24, 1953, was adopted by unanimous vote. The minutes of the sessions at which the appointment was discussed or considered contain no statement of any reason for its disapproval by the county court.

The disputed question of fact in this proceeding relates to the reason for the refusal of the majority of the members of the county court to approve the appointment of Sweringen as deputy sheriff. On this point the testimony of the witnesses is conflicting. The petitioner Hockman testified that after the session of the county court on January 7, 1953, one of the two members of the county court who opposed the appointment told him that the appointment was not confirmed because of politics. This statement is corroborated by a witness, the clerk of the county court, who, however, testified that the statement was made after the matter was discussed at the adjourned session on January 14, 1953. The member of the court to whom this statement is attributed by those witnesses testified that he did not make such statement. The petitioners Hockman and Sweringen, and Smith Hockman, the father of the sheriff, each testified that on January 20, 1953, the other of the two members of the county court told them at his home that the reason he was not in favor of the appointment was Sweringen's "politics". This member of the court also denied the statement attributed to him by these wit-

nesses. Both of these members of the county court testified in effect that their reasons for opposing the appointment were that Sweringen had been absent from this State for several years and that he had never paid any taxes in Tucker County. One of them gave the additional reason that he was not familiar with conditions in that county.

The answer filed by the defendant contains a list of eleven persons whom the defendant considered qualified for the office of deputy sheriff and states that the defendant is advised that each of them would accept the appointment. The testimony of the various witnesses shows that each of the persons so mentioned in the answer is a Democrat. The testimony also shows that the petitioner Sweringen is a young man of good character, that he was born and raised in Tucker County, and lived there until he was nineteen years of age, when he entered the military service of the United States; that he was in the armed forces for about three years during World War II; and that he was honorably discharged in 1946 and returned to and lived in the county for several months. He then obtained employment out of this State, but considered Tucker County as his domicile. He voted in two general elections in that county as a Republican voter, did not vote or register elsewhere, and frequently came back to that county on visits.

In support of their application for the writ which they seek the petitioners assign these reasons: (1) The refusal by the defendant to consent to the appointment of Sweringen because of his political faith was arbitrary and constituted an abuse of its discretion in exercising its statutory authority; and (2) such refusal violated his constitutional right to confirmation of the appointment.

Article VIII, Section 24, of the Constitution of West Virginia relating to county courts to the extent here pertinent provides that "They shall also, under such regulations as may be prescribed by law, have the superintendence and administration of the internal police and

fiscal affairs of their counties, * * *." Section 1, paragraph (a) (2), Article 3, Chapter 6, Code, 1931, as amended, is in this language: "A sheriff, surveyor of lands, or assessor may, with the consent of the county court duly entered of record, appoint any person or persons his deputy or deputies." The paragraph just quoted prescribes no qualifications for any person appointed as any such deputy. Paragraph (a) (3), of the same section, article and chapter is expressed in these terms: "A sheriff, when in the opinion of the judge of the circuit court the public interest requires it, may, with the assent of said court, duly entered of record, appoint any person or persons his deputy or deputies to perform temporary service or duty." By the first quoted provision of the statute the Legislature vested in the sheriff the authority to appoint his deputy and in the county court the authority to consent or not to consent to such appointment. By Section 2 of the same article and chapter, it also gave the power to the sheriff to remove his deputy, without cause, and the power to the county court or other tribunal by and with whose consent the deputy was appointed for good cause shown to remove, or revoke the appointment or the confirmation of, any such deputy. It is clear that in enacting the foregoing statutory provisions the Legislature had in mind the possibility that in exercising its authority to consent to an appointment by the sheriff of his deputy the county court might refuse to give its consent and that, in the event that situation should materialize, the sheriff in protecting the public interest could, with the assent of the circuit court, appoint his deputy or deputies to perform any temporary service or duty. The sheriff, though an important law enforcement officer, does not have the complete or the exclusive control of the internal police affairs of the county. By virtue of the quoted constitutional provision the county court has the authority to superintend and administer, subject to such regulations as may be prescribed by law, the police affairs of the county. The sheriff derives his power to appoint his deputy from the

above quoted statutory provision and his prospective or unconfirmed appointee to that office has no constitutional or vested right to such office. An appointee to public office, in instances in which confirmation of the appointment is required by law, has no right to hold the office until after the appointment is confirmed. "A public office is not property, within the meaning of the constitutional provision that 'no person shall be deprived of life, liberty or property without due process of law and the judgment of his peers.' It is a mere public agency, revocable according to the will and appointment of the people, as expressed in the constitution and the laws enacted in conformity therewith." Point 2, syllabus, *Moore* v. *Strickling,* 46 W. Va. 515, 33 S. E. 274, 50 L. R. A. 279. An incumbent of a public office has no vested right in such office and any right which he enjoys with respect to it is regarded as a privilege which is entitled to the protection of the law. 42 Am. Jur., Public Officers, Section 9. It has been said that the right of an incumbent to hold a public office is "not the right of the incumbent to the place, but of the people to the officer." 42 Am. Jur., Public Officers, Section 9.

In *Broadwater* v. *Booth,* 116 W. Va. 274, 180 S. E. 180, under a provision of a municipal charter that "The mayor shall nominate, and with the approval and consent of the council, shall appoint a city clerk, * * * " this Court held that the mayor of the city had the exclusive authority to appoint the clerk by and with the consent of the council and that the council had the authority to approve or reject the appointment but not the authority to appoint or elect except, under the charter, in case of a vacancy. In the opinion this Court, referring to the provision of the charter that "The mayor shall nominate, and with the approval and consent of the council, shall appoint a city clerk" said: "The situation is directly analogous to the appointment of a state official by the Governor, by and with the consent of the Senate, and the analogy must be carried to full extent. When the Senate fails to ratify an appointment by the

Governor, it does not undertake to make its own choice, but leaves the matter where it belongs—in the discretion of the Governor. Upon failure of confirmation of an appointment, the Governor with convenient dispatch, must submit another nomination—a different individual from the one rejected."

Though the analogy mentioned in the opinion in the *Broadwater* case between the Senate and a municipal council in the exercise of the authority by each of them in approving or rejecting an appointment to an office may not be strictly accurate to the extent that it ignores the distinction between the nature of the Senate, a separate unit of the legislative department of the government whose action is not subject to judicial control and the nature of the authority of a municipal council whose action in certain instances may be subject to judicial control, it is clear that this Court in that case regarded the authority of each to reject an appointment as a positive power of veto and that its exercise may not be directed or controlled by the courts.

In enacting Section 1, paragraph (a) (2), Article 3, Chapter 6, Code, 1931, as amended, the Legislature intended that the sheriff alone could appoint his deputy and that the county court alone could confirm the appointment but could not make it. Under that statute the sheriff may appoint his deputy and the county court may consent or refuse to consent to the appointment. The case of *Wintz* v. *Board of Education of Charleston District*, 28 W. Va. 227, in principle supports the view that the sheriff has the power to appoint his deputy and that the county court has the power to consent or to refuse to consent to the appointment. In that case various provisions of the statute relating to public education then in force were considered and applied. Some of those provisions were that the trustees of every school sub-district should have charge of the schools and should appoint the teachers of such schools; that such appointment should be in writing and submitted to the board of edu-

cation or its president when not in session for approval; that when approved the appointment should be filed with the secretary of the board; that any teacher so appointed could be removed by the trustees or the board on certain enumerated grounds; that the board of education should have general control and supervision of the schools of its districts; that the trustees should be under the supervision and control of the board; and that in all cases the action of the trustees should be subject to revision and correction by the board. Under those provisions of the statute this Court held that an appointment of a teacher by the trustees was not complete until approved by the board of education; that the board had the authority to approve or disapprove; and that it could not be compelled by mandamus to approve the appointment. The opinion in that case employs this pertinent language: "For the wisest purpose the legislature gave the board of education a positive veto-power upon the employment of teachers by the trustees. The trustees might appoint immoral persons, whose immorality was well known to the members of the board. To avoid any scandal, which might be caused by giving a reason for their disapproval, the State lodges in them the discretion to disapprove without being required to give any reason therefor. To say, that a board can by mandamus be compelled to approve the appointment of a teacher, is to say that they have not the power to disapprove, which in this instance is to say, that the legislative requirement, that they should approve the appointment of a teacher, before his appointment is complete, is a useless requirement."

It should be observed that under a statute which provides that a sheriff may, by and with the approval of the county court, appoint his deputy and revoke the appointment at his pleasure, it has been held in another jurisdiction that when the deputy appointed by the sheriff was of good moral character and qualified to perform the duties of the office the sheriff was entitled to a writ of mandamus to compel the county court to approve the appointment. *Fox* v. *Petty*, 235 Ky. 240, 30 S. W. 2d

945. This Court, however, adheres to the principle deducible from the holdings in the *Broadwater* and *Wintz* cases and is not disposed to follow the holding of the Kentucky court in the *Fox* case.

Section 1, paragraph (a) (2), Article 3, Chapter 6, Code, 1931, as amended, is clear and free from ambiguity and the legislative intent is plain. When a statute is clear and free from ambiguity and the legislative intent is plain the statute should not be construed by the courts. *Richardson* v. *State Compensation Commissioner,* 137 W. Va. 819, 74 S. E. 2d 258; *Hereford* v. *Meek,* 132 W. Va. 373, 52 S. E. 2d 740; *State ex rel. Department of Unemployment Compensation* v. *Continental Casualty Company,* 130 W. Va. 147, 42 S. E. 2d 820; *State ex rel. McLaughlin* v. *Morris,* 128 W. Va. 456, 37 S. E. 2d 85; *State* v. *Conley,* 118 W. Va. 508, 190 S. E. 908. If the legislative intent is clear it must govern and be given full force and effect. *Barnhart* v. *State Compensation Commissioner,* 128 W. Va. 29, 35 S. E. 2d 686; *State* v. *Conley,* 118 W. Va. 508, 190 S. E. 908; *Pettry* v. *State Compensation Commissioner,* 111 W. Va. 409, 163 S. E. 16. This statute, properly applied and enforced, confers upon the county court a positive authority to consent or to refuse to consent to the appointment by the sheriff of his deputy and its action in exercising such authority is not subject to judicial direction or control. In the exercise of its authority to consent or to refuse to consent to the appointment by the sheriff of his deputy, the county court may refuse to consent to such appointment without expressing any reason for its refusal. It may be argued that so to apply the statute, in instances in which the sheriff and the county court for no good or sufficient reason refuse to agree upon the appointment of his regular deputy or deputies, will indefinitely deprive the county of the services and the protection of necessary law enforcement officers. The answer to that contention, however, is that the Legislature evidently had in mind a situation of that character in enacting Section 1, paragraph (a) (3), Article 3, Chapter 6, Code, 1931, as amended, which

affords adequate temporary relief, and that the law provides other means to overcome a condition of that nature. Power of the courts to interfere with or control the action of the county court in the circumstances indicated, however, is not among the remedies which the law affords.

As already pointed out the minutes of the sessions of the county court at which the appointment of Sweringen was mentioned or acted upon indicate that the county court expressed no reason for refusing its consent. According to the testimony produced by the petitioners the reason for the disapproval by two of its members was their dislike for his "politics". If that be true the reason was highly improper and wholly inexcusable. From the testimony offered in behalf of the defendant it appears that the reason for the refusal of the two members of the county court to confirm the appointment was the long absences of Sweringen from Tucker County and his failure to pay taxes in that county. If that was the reason it was neither improper nor unwarranted. Though these conditions did not in law disqualify him from holding the office of deputy sheriff they may properly have been considered by those members as sufficient to cause them to reject the appointment. The testimony in its entirety shows that Sweringen is a person of good moral character, is sufficiently qualified to perform the duties of the office, and has discharged them satisfactorily during the time he has acted as deputy sheriff. As the county court in the exercise of its positive authority to consent or not to consent to the appointment of a deputy by the sheriff could grant or withhold its consent without giving any reason for its action, its expression of a wrong or improper reason in no wise affects, impairs or destroys its authority, under the statute, to consent or to refuse to consent to the appointment by the sheriff. Whether the real reason of the two members of the county court for rejecting the appointment was their dislike of Sweringen's political affiliation or their belief that he was not sufficiently qualified for the

office is of no legal importance, and neither reason can operate to invalidate the action of the court in refusing to consent to the appointment or subject that action to judicial direction or control in this proceeding. Consequently mandamus does not lie to compel a county court to consent to an appointment by a sheriff of his deputy.

This Court in many cases has held that he who seeks relief by mandamus must show a clear legal right to the remedy. *State ex rel. Koontz* v. *The Board of Park Commissioners of the City of Huntington,* 131 W. Va. 417, 47 S. E. 2d 689; *State ex rel. Goloversic* v. *Arnold,* 128 W. Va. 272, 36 S. E. 2d 209; *Childers* v. *State Road Commissioner,* 124 W. Va. 233, 19 S. E. 2d 611; *Ebbert* v. *Bouchelle,* 123 W. Va. 265, 14 S. E. 2d 614; *Brumfield* v. *Board of Education,* 121 W. Va. 725, 6 S. E. 2d 238; *Rusinko* v. *Shipman,* 111 W. Va. 402, 162 S. E. 316; *Antonovich* v. *State Compensation Commissioner,* 110 W. Va. 273, 157 S. E. 591; *State ex rel. Woodyard Publications* v. *County Court of Hardy County,* 108 W. Va. 166, 150 S. E. 512; *State ex rel. Goshorn* v. *Johnson,* 102 W. Va. 629, 135 S. E. 899. The petitioners have not satisfied that requirement in this proceeding and, in consequence, the writ prayed for must be denied.

*Writ denied.*