**OPINION OF THE JUSTICES of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.**

Supreme Judicial Court of Maine.

Questions Propounded by the Governor on June 2, 1975.

Answered June 13, 1975.

LETTER PROPOUNDING QUES-
TIONS

State of Maine

Office of the Governor

Augusta

June 2, 1975

To the Honorable Justices of the Supreme
Judicial Court

Under and by virtue of the authority
conferred upon me as Governor by the
Constitution of Maine, Article VI, Section
3, and believing that this is a solemn occa-
sion involving the constitutional rights,
powers and duties of the Governor, Coun-
cil, and Legislature,

I, James B. Longley, Governor of Maine,
submit the following statement of facts

and questions of law and respectfully ask the opinion of the Justices of the Supreme Judicial Court thereon:

## STATEMENT OF FACTS

Title 35 M.R.S.A. § 1 reads, inter alia, as follows:

"The Public Utilities Commission, as heretofore established, shall consist of 3 members appointed by the Governor, with the advice and consent of the Council, from time to time upon the expiration of the terms of the several members, for terms of 7 years and all 3 members of the commission shall devote full time to their duties.:

A majority of the Executive Council has adopted as a prerequisite of Council approval of any gubernatorial nominee to the Public Utilities Commission that a prospective commission member be either an accountant, an economist, a lawyer, or have some knowledge of the "technological data that a Commissioner will encounter".

A vacancy presently exists on the Public Utilities Commission. The action of a majority of the Council in imposing such criteria for membership on the Public Utilities Commission alters the existing legislation and inhibits or prevents the Governor from taking affirmative action to fill the existing vacancy. I have publicly indicated my intention to renominate Edward Schlick of Auburn for membership on the Commission. He is a person who does not meet the particular standards which I understand the Council demands. Any further action on my part with respect to this appointment will be determined by the Court's response to this request for an advisory opinion. Accordingly a solemn occasion exists.

Therefore, I, James B. Longley, Governor of Maine, respectfully request an answer to the following questions:

## QUESTIONS OF LAW

1. May the Executive Council require that a prospective member of the Public Utilities Commission be either an accountant, an economist, a lawyer, or a person who possesses some knowledge of the "technological data that a Commissioner will encounter"?

2. May the Executive Council require that the Governor fill the existing vacancy on the Public Utilities Commission by appointing either an accountant, an economist, a lawyer, or a person who possesses some knowledge of the "technological data that a Commissioner will encounter"?

Respectfully submitted,

(s) _____
James B. Longley, Governor

## ANSWERS OF THE JUSTICES

To the Honorable James B. Longley, Governor of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on June 2, 1975.

The questions are:

*Question (1):* May the Executive Council require that a prospective member of the Public Utilities Commission be either an accountant, an economist, a lawyer, or a person who possesses some knowledge of the "technological data that a Commissioner will encounter"?

■ *ANSWER:* We answer in the negative.

*QUESTION (2):* May the Executive Council require that the Governor fill the existing vacancy on the Public Utilities Commission by appointing either an accountant, an economist, a lawyer, or a per-

son who possesses some knowledge of the "technological data that a Commissioner will encounter"?

■ *ANSWER:* We answer in the negative.

■ Article VI, Section 3 empowers the Justices to give opinions as to "important questions of law, and upon solemn occasions" when requested to do so by the Governor or by either branch of the Legislature. Our first duty upon receiving such a request for an opinion must be to determine whether "a solemn occasion exists." Opinion of the Justices, Me., 281 A.2d 321, 322 (1971).

We note that the questions are the same as those submitted to the Justices on May 16, 1975 which we felt it necessary to decline to answer because the circumstances failed to present us with the solemn occasion which would oblige and entitle us to express our opinions, as we explained. Opinion of the Justices, Me., 339 A.2d 489 (1975). The present questions, however, are accompanied by a statement of fact which asserts that the Governor has the duty to nominate to fill the existing vacancy on the Public Utilities Commission and that he intends to do so by again nominating Edward Schlick, who was previously rejected for appointment to the same office by the Executive Council and who does not possess the qualifications which the statement of fact asserts is demanded as a prerequisite by a majority of the members of the Executive Council, to wit:

" . . . that a prospective commission member be either an accountant, an economist, a lawyer, or have some knowledge of the 'technological data that a Commissioner will encounter'."

■ We are of the opinion that, with this additional factor of intention to act, the circumstances now

" . . . present us with an actual and live controversy . . . [surrounding action to be taken by] the Governor

 . . . as focused directly and immediately upon [one person's] . . . renomination . . . to a public office . . . [and] . . . constitute the 'solemn occasion' required by Article VI, Section 3, of the Constitution of Maine." Opinion of the Justices, Me., 330 A.2d 912, 916 (1975); see also: Opinion of the Justices, Me., 339 A.2d 489 (1975), supra.

Although the Justices once declined to answer questions submitted to them by the Senate, explaining that Article VI, Section 3 does not authorize them to advise the Senate as to the duty and authority vested in the executive branch of state government (Questions and Answers, 132 Me. 491, 167 A. 176 (1933) ), the Justices avoided any suggestion that one body of the executive department could not inquire as to that part of their inter-related duties which would be performed by the other body. We still hold to the belief that the Constitution permits the Governor to inquire, on solemn occasions, as to the extent to which the authority of the Governor may be limited by the Executive Council in matters requiring their *joint* participation.

Neither do we entertain any doubt that the questions present important issues of law. The part to be played by the Governor and the part to be played by the members of his Executive Council in the appointing process has never been clearly defined by either the Supreme Judicial Court or by its Justices in advisory opinions and we find little decisional law elsewhere on the issues presented by these questions.

The Statement of Facts accompanying the Governor's Questions tells us that

" [a] majority of the Executive Council has adopted as a prerequisite of Council approval of any gubernatorial nominee to the Public Utilities Commission that a prospective commission member be either an accountant, an economist, a lawyer, or have some knowledge of the 'technological data that a Commissioner will encounter'."

In the light of this statement, we understand the sense of the two questions to be that the Governor desires to know whether the Executive Council may prescribe specific attributes which nominees to the Public Utilities Commission must possess in order to receive confirmation.

■ We are satisfied that such an action is beyond the Council's authority.

Article V, Part First, Section 1 of the Constitution of Maine, vests the supreme executive power of the State in the Governor and Section 8 thereof empowers him to

" . . . nominate, and, *with the advice and consent of the Council,* appoint all judicial officers (except judges of probate), coroners, and notaries public; and he shall also nominate, and *with the advice and consent of the Council,* appoint all other civil and military officers, whose appointment is not by this Constitution, or shall not by law be otherwise provided for, except the land agent; and every such nomination shall be made seven days, at least, prior to such appointment." (emphasis added)

The Constitution also creates the Executive Council, giving it certain duties and obligations including the duty

" . . . to *advise* the Governor in the executive part of government . . .." (Art. V. pt. 2, § 1) (emphasis added)

Our study of the few decisions which concern the respective duties of the Governor and Council in the appointing process —and as to the power of removal which the Justices of this Court have held is implicit in and analogous to the appointing power (Opinion of the Justices, 72 Maine 542, 548 (1881)—makes clear the Governor and Council are separate parts of the executive branch with distinct but (where the Council must advise and consent) independent and indispensable responsibilities in the appointing process. The Governor acts independently in making the nomination and the Council acts independently in its decision to grant or withhold consent.

Opinion of the Justices, 72 Me. 542, supra. The same separate and independent areas of responsibility as to the appointing process are recognized as resulting from similar constitutional provisions in Massachusetts and New Hampshire. Murphy v. Casey, 300 Mass. 232, 15 N.E.2d 268 (1938); Opinion of the Justices, 210 Mass. 609, 98 N.E. 101 (1912); In re Opinion of the Justices, 98 N.H. 530, 98 A.2d 635 (1953).

Whether an Executive Council serves as the confirming body (as in Maine, Massachusetts and New Hampshire) or whether the independent discretion is given to some other unit of government, an obvious design is one of checks and balances, and action of the nominating officer cannot be carried to fruition without the affirmative participation of the consenting body. People v. Christian, 58 Wyo. 39, 123 P.2d 368 (1942); Hockman v. Tucker County Court, 138 W.Va. 132, 75 S.E.2d 82 (1953); Murphy v. Casey, supra.

In 1913, the Legislature provided that the members of the newly created Public Utilities Commission should be appointed by the Governor "with the advice and consent of the council". While the pending questions concern the Councillors' authority under this *statute,* we must bear in mind that the legislature which enacted it presumably had some understanding of the nature of the constitutional responsibilities of the Executive Council to advise and consent.

■ It may safely be assumed that the Legislature intended that persons appointed to the Public Utilities Commission should be *competent* to perform their duties in the public interest and that each official entrusted with the appointment responsibility should determine the matter of competence in each case in his own discretion.

Although it is the right of each Councillor to use his own discretion, in good faith, as to the qualifications he believes necessary to entitle a nominee to fill a vacancy

on the Public Utilities Commission, both the Constitution and the statute require him to do this in reference to a particular nominee and not as a pre-established general rule of eligibility. The constitutional provision requiring the posting of nominations at least seven days prior to Council action on confirmation contemplates a good faith examination of sufficient depth by each Councillor into the fitness for office of each candidate nominated by the Governor, regardless of earlier concepts of or opinions expressed by some Councillors as to minimum standards for qualification. After having made that good faith examination, the Councillor is free to exercise his own best judgment as to confirmation or rejection of that particular nominee but without the strictures of pre-established absolute standards. Hockman v. Tucker County Court, supra.

■ Clearly, it is no part of the duties of the Council to attempt to dictate the nomination or to originate the action. Juggins v. Executive Council to the Governor, 257 Mass. 386, 154 N.E. 72 (1926). The choice of whom to nominate rests with the Governor alone. However, the Constitution makes it the responsibility of the Council to

". . . advise the Governor in the executive part of government . . . ."

■ The Legislature has required that the Council should both advise on and consent to appointments to the Commission. We have studied the debates which took place at the Constitutional Convention (Perley's Debates, printed by A. Shirley, 1820) concerning the drafting of the provision creating an Executive Council and we are satisfied that the delegates envisioned the Councillors as serving as advisors to the Governor concerning appointments to

public office, rather than as merely silently casting votes to confirm or reject.

■ The Governor may or may not seek the advice of the Council. He may or may not follow it if it is given. The Constitution contemplates the right of the Governor to ask the Council's advice and, conversely, we believe, the right of the Council to volunteer advice if it chooses, so long as it is advice as distinguished from an absolute requirement. If Councillors entertain beliefs as to the value of certain training or experience to persons who may serve on the Public Utilities Commission, we see no reason why they may not articulate these thoughts to the Governor.

However, the adoption of prerequisites for Council approval, such as the Governor understands to have been imposed by the Council, goes beyond the area of advice and constitutes a denial in advance of the individualized consideration of the attributes of each candidate which is expected under both the Constitution and the statute.

In the strictest sense, the Governor would still be free to nominate whomever he chooses even though he knew it would be a futile act. Yet, the practical effect of the Council's adoption of prerequisites would be to limit the Governor's exercise of his constitutional authority to nominate —a process in which he should be free to select and present for Council evaluation the person whom he considers most appropriate to fill the position.

Dated at Portland, Maine, this thirteenth day of June, 1975.

Respectfully submitted:

ARMAND A. DUFRESNE, Jr.
RANDOLPH A. WEATHERBEE
CHARLES A. POMEROY
SIDNEY W. WERNICK
JAMES P. ARCHIBALD
THOMAS E. DELAHANTY