# Richmond

R. O. Norris, Jr. v. Henry G. Gilmer, Comptroller
of Virginia.

November 20, 1944.

Record No. 2907.

Present, All the Justices.

The opinion states the case.

*C. O'Conor Goolrick* and *Robert H. Chilton, Jr.*, for the petitioner.

*Guy B. Hazelgrove*, for the respondent.

EGGLESTON, J., delivered the opinion of the court.

This is a petition for mandamus to require the defendant in his official capacity as State Comptroller, to issue to the petitioner a warrant for the latter's salary for two days, August 30 and 31, 1944, alleged to be due for services as a member of the State Corporation Commission. The amount of money involved is not in issue and the only controversy submitted to us is whether or not the petitioner is *de jure* a member of the State Corporation Commission.

On August 30, 1944, the Governor of Virginia issued to the petitioner a commission appointing him "a member of the State Corporation Commission for the unexpired term ending January 31, 1950, subject to confirmation by the General Assembly, or until his successor be chosen as provided by law." On the same day the petitioner took and subscribed to the oath of office required by law and assumed the duties as a member of the Commission.

At the time of his appointment the petitioner was a member of the General Assembly of Virginia, having been elected to and having qualified as a member of the Senate from the Thirtieth Senatorial District for the term of four years commencing the second Wednesday in January, 1944. Because of this fact doubt was expressed as to his eligibility for the office and the validity of his appointment thereto. A question was also raised as to whether the appointment should have been "for a term ending thirty days after the commencement of the next session of the General Assembly," in accordance with Code, section 3694, as amended by Acts 1944, ch. 19, p. 17.

While the Governor, before making the appointment, had been assured by an opinion of the Attorney General of the petitioner's eligibility, and the term for which the appointment should be made, the interests of both the Commonwealth and the petitioner demanded that these questions be judicially determined. Hence this proceeding.

Counsel for the petitioner insist that he is eligible to fill the office, that his appointment is in all respects valid, and that he is entitled to a warrant for the salary due him.

The Comptroller, through his counsel, takes the position that the petitioner was not "a qualified person" to be appointed to the position; that his appointment was in violation of sections 45 and 155 of the Constitution of Virginia, and was void *ab initio;* and that hence the petitioner is not legally entitled to any salary as a member of the State Corporation Commission.

No question has been raised as to the jurisdiction of this court to decide the issues thus submitted to it. Indeed, both parties urge upon us the importance of the questions involved and the desirability, both from the standpoint of the Commonwealth and of the petitioner, that they be settled promptly.

If the position of the Comptroller be sound and the petitioner's appointment be void *ab initio*, then the petitioner is merely a *de facto* officer and is not entitled to the salary attached to the office. 43 Am. Jur., Public Officers,

sec. 488, pp. 237, 238, and authorities there cited. That mandamus is an appropriate remedy to test the question thus raised is well settled. 35 Am. Jur., Mandamus, sec. 245, pp. 19, 20; *Roanoke* v. *Elliott*, 123 Va. 393, 414, 96 S. E. 819.

Section 155 of the Constitution, so far as it relates to the appointment and qualifications of members of the State Corporation Commission, reads as follows:

"There shall be a permanent commission, to consist of three members, which shall be known as the State Corporation Commission. Their regular term of office shall be six years, respectively. Whenever a vacancy in the commission shall occur, the Governor shall forthwith appoint a qualified person to fill the same for the unexpired term, subject to confirmation by the General Assembly or until his successor be chosen as provided by law. Commissioners selected for regular terms shall, at the beginning of the terms for which selected, and those appointed to fill vacancies, shall immediately upon their selection or appointment, enter upon the duties of their office. The commissioners shall be elected by the General Assembly. The present commissioners shall continue in office until the expiration of their present terms. The terms of their successors shall begin on the first day of February next succeeding their selection.

"No person while employed by, or holding any office in relation to, any transportation or transmission company, or while in any wise financially interested therein, or while engaged in practicing law, shall hold office as a member of said commission, or perform any of the duties thereof. Nor shall any such person be interested, either directly or indirectly, in any insurance company, association or fraternal organization, or in any bank, trust or other like company doing business in this State and which is by law made subject to the supervision of said State Corporation Commission, but this section shall not be so construed as to prevent any such person from being a policyholder in any insurance company, insurance association, or fraternal organization.

"At least one of the commissioners shall have the qualifications prescribed for judges of the Supreme Court of Ap-

peals; and any commissioner may be impeached or removed in the manner provided for the impeachment or removal of a judge of said court."

It will be observed that here the Governor is not given an unlimited power of appointment to fill a vacancy on the Commission. He may appoint only "a qualified person," and such appointment is "subject to confirmation by the General Assembly."

While the second paragraph of the section enumerates certain persons who shall not "hold office as a member of said commission, or perform any of the duties thereof," there is no indication that the term, "a qualified person," was intended merely to exclude such persons. Surely, an appointee must meet the other tests prescribed by the organic law, —that is to say, one who is disqualified under any other provision of the Constitution from being elected to or holding the office is not "a qualified person."[1]

Section 45 of the Constitution provides that no member of the General Assembly "during the term for which he shall have been elected shall be elected by the General Assembly to any civil office of profit in the State." Manifestly, by reason of this section the petitioner would not be eligible to election by the General Assembly at its next regular session, or at any extra session which might convene prior thereto, because the term for which he was elected a member of the General Assembly will not have then expired.

---

[1] Section 155 of the Constitution of 1902 provided that the Governor should fill a vacancy on the Commission by appointing "a qualified person" to fill the same for the unexpired term, subject to confirmation by the General Assembly. The section also enumerated certain persons who were ineligible for membership on the Commission. Chapter 147 of the Acts of 1902-3-4 was adopted, as stated in its title, "to put into effective operation the provisions of the Constitution relating to the creation, appointment and organization of the 'State Corporation Commission.'" Sections 2 and 3 of that Act (Code, sections 3694, 3695) required qualifications of a member in addition to those mentioned in section 155 of the Constitution. They provided that he possess "the qualifications prescribed by the Constitution and by law to be a member of the 'State Corporation Commission,'" that he be "a citizen of this State," and "a qualified voter under the Constitution and laws of this State."

But petitioner's counsel insist that this latter section does not render him ineligible for the appointment to fill the vacancy, because under the language of section 155, such appointment is merely "subject to confirmation" by the General Assembly, which, they say, is quite different from an election by that body.

It is true that ordinarily there is a marked distinction between the power of the General Assembly to elect and its power to confirm an appointment. When the General Assembly elects, it alone chooses or selects the officer. When it confirms an appointment made by the Governor, it but evidences its approval of or acquiescence in the selection or choice of the officer made by the chief executive. In the one case the initiative rests solely with the General Assembly, while in the other it rests solely with the Governor in the exercise of his power of appointment.

But here we do not have an example of "confirmation" in the ordinary meaning of that term. The section defines the word "confirmation," as there used, for it provides in clear and unambiguous language, that "The commissioners shall be elected by the General Assembly." This provision relates to all commissioners and not merely to those who are elected for regular terms. It immediately follows a sentence dealing both with "commissioners selected for regular terms" and "those appointed to fill vacancies."

Hence, in our opinion, "confirmation by the General Assembly," as used in this section, means "election by the General Assembly." This view is fortified by the observation that the draftsmen of this section use several words, all meaning the same thing: "subject to *confirmation* by the General Assembly;" "until his successor be *chosen* as provided by law;" and "Commissioners *selected* for regular terms." Here "confirmation" must mean "election," and "chosen" and "selected" must mean "elected," because of the clear mandate that, "The commissioners shall be *elected* by the General Assembly."

When the Governor appoints "a qualified person" to fill an existing vacancy on the Commission, the General

Assembly may do one of two things. It may elect the appointee, in which event he stands confirmed in the office, or it may elect another person in his place, in which latter case the appointee's successor has been "chosen as provided by law." But whichever course is pursued, the person selected holds his office because he has been "elected by the General Assembly."

To adopt the interpretation urged on behalf of the petitioner and to hold that an appointee to a vacancy on the Commission may merely be *confirmed*, as that term is ordinarily used, and need not be *elected*, would require us to read out of the section and disregard entirely the unequivocal mandate requiring that all of the commissioners "shall be elected by the General Assembly." Moreover, it would drive us to the illogical conclusion that the General Assembly could *confirm* as an appointee a person whom it was forbidden by section 45 to *elect*.

That the final power to elect members of the Commission is now vested in the General Assembly clearly appears from a history of section 155. In the Constitution of 1902 this section provided: "The commissioners shall be appointed by the Governor, subject to confirmation by the General Assembly in joint session, * * * . Whenever a vacancy in the commission shall occur, the Governor shall forthwith appoint a qualified person to fill the same for the unexpired term, subject to confirmation by the General Assembly as aforesaid."[2]

Pursuant to an act approved March 25, 1926 (Acts 1926, ch. 481, p. 797) the Governor appointed a commission to suggest amendments to the Constitution of Virginia. The

---

[2] The final sentence in the section provided that, "After the first day of January, nineteen hundred and eight, the General Assembly may provide for the election of the members of the commission by the qualified voters of the State; * * * ."

Section 3694 of the Code of 1919 continued in effect the provisions for appointment of the members of the Commission by the Governor, but the Acts of 1918, ch. 55, p. 108, provided for their election by the people. The latter statute was repealed by Acts of 1926, ch. 37, p. 48, which restored the power of appointment to the Governor.

report of this commission is printed as "House Document No. 2," in House Journal, 1927 Ex. Sess. While the commission proposed certain changes in section 155, it recommended the retention of the provisions for the appointment of members of the State Corporation Commission by the Governor, "subject to confirmation by the General Assembly in joint session," and for filling vacancies thereon by like appointment and confirmation. (House Document No. 2, pp. 82-84, House Journal, 1927 Ex. Sess.)

But the suggested recommendations of the commission for the method of selecting members of the State Corporation Commission, and for filling vacancies on that body, did not meet with the approval of the General Assembly. The House of Delegates amended the section to provide that: "The commissioners shall be elected by the General Assembly in joint session, and vacancies thereon filled in the same manner as is provided for the election of judges of the Supreme Court of Appeals and for the filling of vacancies on such court." (House Journal, 1927 Ex. Sess., p. 92.)

The Senate amended the section, as amended by the House, to provide that the commissioners be "appointed by the Governor, subject to confirmation by the General Assembly, or elected by the General Assembly, as may be provided by law." (Senate Journal, 1927 Ex. Sess., p. 227.) The Senate further amended the section by providing that: "Whenever a vacancy in the commission shall occur, the Governor shall forthwith appoint a qualified person to fill the same for the unexpired term, subject to confirmation by the General Assembly or until his successor be chosen as provided by law." (Senate Journal, 1927 Ex. Sess., p. 232.)

Conferees on the part of the Senate and of the House of Delegates adjusted these marked differences in the proposed methods of selecting the members of the Commission, and of filling vacancies thereon, and rewrote the provisions in their present form. (Senate Journal, 1927 Ex. Sess., pp. 291, 292; House Journal, 1927 Ex. Sess., p. 307.) The provision that the commissioners "shall be elected by the General Assembly" was deliberately inserted upon the recom-

mendation of the conferees and was adopted by both Houses. (Senate Journal, 1927 Ex. Sess., pp. 292, 295; House Journal, 1927 Ex. Sess., pp. 307, 310.)

Our view that under this section the Governor's appointee must be "elected" is fortified by the fact that the General Assembly itself has placed that interpretation upon the section.

On August 18, 1933, Governor Pollard notified the members of the General Assembly that he had "appointed Thomas W. Ozlin, * * * to be a member of the State Corporation Commission for the unexpired term beginning April 17, 1933, and ending February 1, 1938, or until his successor be chosen as provided by law, to fill the vacancy occasioned by the resignation of Hon. George C. Peery." (House Journal, 1933 Ex. Sess., p. 9; Senate Journal, 1933 Ex. Sess., p. 19.) The appointee was nominated for election and "elected" by both branches of the General Assembly to fill the vacancy.[3] (House Journal, 1933 Ex. Sess., pp. 17-20; Senate Journal, 1933 Ex. Sess., pp. 26-28.)

Again, by Acts of 1944, ch. 19, p. 17, the General Assembly amended Code, section 3694, providing for the election or appointment of members of the Commission. This Act passed the General Assembly without a dissenting vote.[4] The second paragraph provides:

"Whenever a vacancy in the Commission shall occur or exist when the General Assembly is in session it shall *elect* a successor for such unexpired term. If the General Assembly is not in session, the Governor shall forthwith appoint pro tempore a qualified person to fill the vacancy for a term ending thirty days after the commencement of the next ses-

---

[3] See similar manner in which William Meade Fletcher was elected to succeed himself as a member of the Commission for the full term of six years beginning February 1, 1934. (House Journal, 1934 Sess., p. 92; Senate Journal, 1934 Sess., p. 66.)

[4] The vote in the House of Delegates was "yeas, 83; nays, o." (House Journal, 1944 Sess., p. 115.)

The vote in the Senate was "yeas, 38; nays, o." (Senate Journal, 1944 Sess., p. 154.) The petitioner here is recorded as having voted for the measure.

sion of the General Assembly, and the General Assembly shall *elect* a successor for such unexpired term." (Italics supplied.)

Clearly, under this language, when a vacancy occurs in the Commission, whether the General Assembly be in session, or whether there be an *ad interim* appointment by the Governor, the "successor" must be elected by the General Assembly.

It is true that the petitioner here challenges the constitutionality of that Act on the ground that it limits the Governor's power of appoinment to "a term ending thirty days after the commencement of the next session of the General Assembly," whereas section 155 of the Constitution requires that such appointment be made "for the unexpired term, * * * or until his successor be chosen as provided by law," and that this position was upheld by a ruling of the Attorney General. Whether that contention and ruling be sound we need not here decide. In any event, the Act is a clear expression by the General Assembly of the view that the Governor's appointee to fill a vacancy on the Commission must be "elected" by the General Assembly and not merely "confirmed" by it within the ordinary meaning of the latter term.

The argument is made that the appointment of the petitioner to fill the vacancy does not violate section 45 of the Constitution, because, it is said, that while that section originally provided that no member of the General Assembly "shall be appointed or elected to any civil office of profit in the State except offices filled by the election by the people," the present section, upon the recommendation of the revisors, omitted the prohibition against "appointment" of such members. It is pointed out that in recommending this change the revisors said: "No good reason is seen why members of the General Assembly should not be eligible to appointive office." (House Document No. 2, p. 30, House Journal, 1927 Ex. Sess.)

A complete answer to this argument is that, as already indicated, a member of the State Corporation Commission

holds an elective and not an "appointive office." Hence, the change in section 45 does not remove the ineligibility of a member of the General Assembly to that office. Examples of "appointive" officers, each of whom is appointed by the Governor and merely confirmed by the General Assembly, and holds a "civil office of profit in the State," are: Secretary of Commonwealth (Const., sec. 80); State Treasurer (Const., sec. 81); Superintendent of Public Instruction (Const., sec. 131); Adjutant General (Michie's Code of 1942, sec. 2673(12) ).

Since the petitioner, by reason of his membership in the General Assembly, is not qualified to be elected by that body to be a member of the State Corporation Commission for the unexpired term of his predecessor for which he was appointed (which election, in our opinion, is required by section 155 of the Constitution), it necessarily follows that he was not "a qualified person" to fill the vacancy thereon for such term, and his appointment to the office was void *ab initio.*

Having reached this conclusion it is not necessary that we discuss the other questions raised in the briefs.

The mandamus is denied.

*Mandamus denied.*