MOUELL v. LOCAL NO. 7635, UNITED MINE WORKERS OF AMERICA, et al.

No. 701.

United States District Court
S. D. West Virginia.

Oct. 8, 1948.

Leslie E. Given, U. S. Atty., of Charleston, W. Va., for petitioner.

Townsend & Townsend, T. C. Townsend and Mose E. Boiarsky, all of Charleston, W. Va., for respondents.

MOORE, Chief Judge.

This is a case in which petitioner has filed his petition under the provisions of § 8(e) of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 308(e), seeking the aid of the Court to require respondents to comply with the provisions of the Act relative to reemployment of veterans. It is submitted for decision upon a stipulation of facts.

Petitioner was inducted into the Armed Forces on April 22, 1944. At the time of his induction he held the position of checkweighman at Gary #2 Mine of the United States Coal and Coke Company. Prior to the month of June, 1942, he had been employed as a motorman at the same mine and was a member of the United Mine Workers of America.

At a meeting of the local union held in the month of June, 1942, and presided over by the regular union officers, the coal loaders and machine men employed at Gary #2 Mine separated themselves, as had been the practice in preceding years, from the remainder of the union membership present at the meeting, assembled in another part of the meeting place and by a majority vote of such coal loaders and machine men elected two checkweighmen, one of whom was petitioner, and also a relief man, each to serve for a term of one year. A similar procedure was followed in June, 1943, when petitioner was again elected as one of two checkweighmen, together with a third person as a relief man, for another term of one year. Thus, at the time of his entry into the Armed Forces, there was left of petitioner's term approximately one and one-half months yet to run.

At a regular meeting of the local union held on October 24, 1943, a resolution was adopted providing that "local officers, mine committeemen and checkweighmen will have their same job to their elected offices in case they are inducted into the Armed Services."

The unexpired portion of petitioner's term was filled by the relief man elected for that year. At the annual election of checkweighmen in June, 1944, at which election petitioner was not a candidate, he being at the time in the Armed Forces, other persons were elected to the offices for terms of one year.

Petitioner was honorably discharged in September, 1944. On October 1, 1944, and within the time limit fixed by the Act, he made application to the local union at a special meeting thereof for reinstatement as checkweighman. No action was taken on his application, but it was referred by the secretary of the local union to George J. Titler, President of District 29, United Mine Workers of America, of which district the local union is a constituent part. On October 4, 1944, Titler informed the local union by letter that petitioner had no right to reinstatement unless reelected. The local union was also informed by John L. Lewis, President of the United Mine Workers of America, by letter of October 5, 1944, that the International Executive Board had on April 11, 1944, ruled that "any Local Union officers or checkweighmen going into the Armed Forces of our country can again resume their office or position upon their return, if the term of office for which they were elected is still unexpired." Petitioner was notified by the local union by letter dated October 7, 1944, of Titler's decision in connection with his case, and on October 8, 1944, at a meeting of the local union, at which petitioner was present, both Titler's letter and Lewis' letter were read, but no further action was taken. Thereafter petitioner complained to various government agencies concerning his failure to obtain reinstatement and requested their assistance, but whether these complaints and requests were continuous or sporadic is not clearly shown in the stipulation of facts upon which this case has been submitted for decision.

Annual elections for checkweighmen were held and checkweighmen were elected in June, 1945, and June, 1946. At neither of these elections was petitioner a candidate for the position. In April, 1947, the position of checkweighman was abolished, but as to why or how this was done the stipulation of facts is silent. However, it is stated in petitioner's brief that this was due to a change in the methods of operation at the mine.

In January, 1947, petitioner, through the United States District Attorney, instituted this suit against the individual respondents in their official capacity and against the local union as such.

The applicable provisions of the Selective Training and Service Act are as follows:

"(b) In the case of any such person (inducted into military service) who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer * * * such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; * * *."

The Code of West Virginia, Chapter 21, Article 5, § 8, provides the following statutory method of appointing checkweighmen:

"Where the amount of wages paid to any of the persons employed in any manufacturing, mining, or other enterprise employing labor, depends upon the amount produced by weight or measure, the persons so employed may, at their own cost, station or appoint at each place appointed for the weighing or measuring of the products of their labor a checkweighman or measurer, who shall in all cases be appointed by a majority ballot of the workmen employed at the works where he is appointed to act as such checkweighman or measurer."

The Constitution of the International Union, United Mine Workers of America, contains the following provisions relative to checkweighmen:

Article XIV, § 35: "Only members who contribute to the support of Checkweigh-men shall have the right to vote for their election."

§ 36: "Checkweighmen must be members of the United Mine Workers of America six months previous to their election and shall keep a record of all men employed in and around the mine and perform such other duties as may be assigned them by the men who employ them. * * *"

The agreement between the United States Coal and Coke Company and the United Mine Workers of America, District 29, provides with reference to checkweighmen as follows:

"The Mine Workers shall have the right to a checkweighman of their own choosing to inspect the weighing of coal. Such checkweighman is to be selected from the Mine Workers at that mine."

"The wages of checkweighmen will be collected through the pay office semi-monthly upon a statement of time made by the checkweighman, and approved by the Mine Committee. The amounts so collected shall be deducted on a percentage basis, agreed upon by the checkweighman and clerk, from the earnings of the miners engaged in mining coal and shall be sufficient only to pay the wages and legitimate expenses incident to the office, except where the method of payment is otherwise mutually agreed to."

"In case a checkweighman is removed from office as such, either by expiration of term or for other cause, his status as an employee at the mine shall be the same as though he had not served as checkweighman."

The Constitution of the International Union also contains the following provision with reference to officers of the Union:

Article XIV, § 31: "All Local Officers shall be elected the last meeting in June every alternate year by a majority vote of the members present, and shall serve for a period of two years, or until their successors are elected and qualified."

Respondents have interposed sixteen separate defenses to petitioner's claim for reinstatement, but it is necessary here to consider only two of these, since the decision of the Court, based on these two defenses, disposes of the case. They are,

briefly, that respondents were not the employers of petitioner in his position of checkweighman; and that the position of checkweighman, being elective and for a stated term of one year, was not a position "other than a temporary position" within the meaning of the Act.

Respondents contend that the first defense named is jurisdictional, arguing that since, as they allege, only the coal loaders and machine men who elected petitioner as checkweighman were his employers, they are therefore indispensable parties to the proceeding and that failure to join them as respondents left the Court without jurisdiction to entertain the petition. While I agree with respondents' views as to who petitioner's employers were, as will hereinafter appear, still I am of opinion that petitioner's having sued the wrong parties is not a jurisdictional defect. The Court has jurisdiction both of the subject matter and the parties. Judgment rendered in the case, whether for petitioner or for respondents, will not affect the rights of any person who is not a party. Nothing else is required to enable the Court to proceed with the case and to adjudicate the rights of the parties who are before it.

My conclusion is that the coal loaders and machine men who elected petitioner to the position of checkweighman, who alone were liable for his compensation and who had the sole right to direct his activities, were his employers within the meaning of the Act, and that consequently respondents were not his employers. Though I agree that Courts should liberally construe the words "in the employ of any employer" as used in the Act, and must consider all factors bearing upon the question, without giving decisive force to abstract tests or formulae or the usual common-law principles (see Hudspeth v. Standard Oil Co. of New Jersey, D.C.W.D. Ark.1947, 74 F.Supp. 123), yet there must be present some incident of the employer-employee relationship, which, though perhaps insufficient to fix liability in an ordinary tort case, might nevertheless bring petitioner within the purview of the Act. It is evident that he cannot be considered as an officer of the local union under the quoted provision of the union constitution, since that requires that *all* local officers shall be elected for a term of two years, or until a successor is elected and qualified, and that the election shall be had by a majority of members of the local union then present. Petitioner was elected for a term of only one year. At the expiration of his term he did not have the right to hold over until a successor was elected and qualified, but on the contrary, by express terms of the agreement between the coal company and the union, unless reelected he would have reverted to his previous status as a coal company employee. He was not elected by a majority of the members of the local union present at the meeting, but by a majority of the coal loaders and machine men, who separated themselves from the meeting and conducted an independent election in which other members of the union had no right to vote. He was paid on a percentage basis from the earnings of the coal loaders and machine men alone by whom he was elected, and his duties were assigned by them. Respondents had no control over him, did not pay him, could not discharge him, and as an organization were not entitled to participate in his selection. Had he been removed from his position for any cause, respondents, in their organized capacity, or as officers of the local union, had no power to replace him. In short, petitioner's only relationship to respondents was as a member of the union whose election to an extraneous position, as authorized by the West Virginia Statute, was facilitated through use of the union structure. I find no circumstances which leads me to believe that any of the necessary elements which go into the creation or maintenance of the employer-employee relationship existed.

I conclude also that petitioner's position as checkweighman was a temporary one within the meaning of the Act. He was subject to election each year. At the expiration of the term for which he was elected, if not previously reelected for the next succeeding term, he would revert to the status he had occupied prior to the beginning thereof. So, at the time he entered the Armed Forces, petitioner's status was that of one who, having been an employee of the coal company, and having been

elected as checkweighman for a limited term of one year, had approximately one and one-half months left in which to serve, at the expiration of which time, unless reelected in the interim, he would have had no right or claim to that position.

The purpose of the Act was evidently to grant to veterans those advantages and employment privileges which would assure to them equal opportunity with those persons who remained in civilian jobs. In other words, the purpose was that veterans should suffer no detriment with reference to their employment by having left their jobs to serve their country. The provision of the Act for one year of reemployment free from threat of arbitrary dismissal was for the purpose of enabling them to regain their proficiency at their old jobs, to become acquainted with any new methods which might have come into use, and otherwise to equip them to compete on an equal footing with those who remained behind. Kay v. General Cable Corp., 3 Cir., 1944, 144 F.2d 653; Droste v. Nash-Kelvinator Corp. et al., D.C.E.D.Mich.1946, 64 F.Supp. 716. This intention presupposes that, when he entered the service, the veteran occupied a position with his employer which in the normal course of events, he might expect to hold indefinitely. It was not the purpose of the Act to give veterans better rights and to endow them with greater prospects than they had previous to leaving their positions for military service. The distinction may be illustrated by supposing a situation wherein we assume that all the facts are the same as those herein stated, except that instead of one and one-half months, petitioner had only one day left to serve as checkweighman at the time he entered the army, reverting the next day, unless reelected to his former status as an employee of the coal company. Could it then be reasonably argued that he would be entitled to reinstatement as checkweighman for one year? I think not. Yet the only difference between the real situation and the suppositious one lies in length of the unexpired term. The principle of statutory interpretation is the same. "* * * the Act and the regulations made thereunder, must be liberally construed, but such liberal construction of course, should not be carried to the point where it does violence to the Act itself." Tipper v. Northern Pacific Ry. Co., D.C.W.D.Wash.1945, 62 F.Supp. 853, 854. The most that could be plausibly argued under these facts is that if petitioner had returned before his term expired, he might compel reinstatement for the unexpired portion of his term. Fraser v. Shoberg et al., D.C.E.D.Wash. 1946, 65 F.Supp. 83.

The resolution of the local union adopted in October, 1943, could not convert petitioner's temporary job into a permanent one. There is nothing in the stipulation of facts to show that a majority of the coal loaders and machine men who elected petitioner assented to the resolution or that any or all of them were even present and voting. The membership of the local union as a whole could not impose their choice of a checkweighman upon the coal loaders and machine men, who under the West Virginia Statute, as well as under the union constitution, had the right to select a man of their own choosing.

Petitioner places great reliance on the case of Houghton v. Texas State Life Ins. Co. et al., 5 Cir., 1948, 166 F.2d 848, 849, wherein the "permanency of position" test was applied to the office of president of a corporation having managerial duties, and a divided court held that since such office endures during the lifetime of the corporation, the position is "other than a temporary," even though filled by the year, and that a veteran who qualified under the Act was entitled to reinstatement in the office. While I have found no direct authority contrary to the Houghton case other than the Fraser case, supra, yet expressions of courts in other cases indicate that they have taken for granted the proposition that a veteran who held only a purely elective position to which he had no assurance of being reelected is not entitled to the benefits of the Act. Doane Co. v. Martin, 1 Cir., 1947, 164 F.2d 537; Van Doren v. Van Doren Laundry Service, Inc., 3 Cir., 1947, 162 F.2d 1007; Parker v. Maynard Boyce, Inc., D.C.S.D.Cal.1946, 74 F. Supp. 581.

With all due deference to the holding in the Houghton case, I am firmly

of opinion that the words, "temporary position," as used in the Act, have reference not only to a position which *exists* for a short time, but also to one which *is held* for a short time, with no assurance either from custom, contract or reasonable expectation that it will continue to be held beyond that time. The case of United States v. Wimbish, 154 F.2d 773, 775, decided in 1946 by the Fourth Circuit Court of Appeals, supports the view that the continuous nature of the employment or its lack of continuity is the proper test to be used in determining whether a veteran's position was "other than a temporary position," within the meaning of the Act. Although that case dealt with seasonal employment, I see no reason why the test should not be the same in all cases.

Ordinarily, I would give some consideration, also, to respondents' contention that, by lack of diligence in asserting his rights, petitioner is now barred by laches from enforcing his claim to reinstatement. My reason for not discussing and deciding this issue is that the stipulation of facts does not give a sufficiently connected history of petitioner's conduct in this regard to enable the Court to make an intelligent finding.

The opinion of the Court is that petitioner has proceeded against parties who were not his employers at the time he entered military service; and also that his position was not "other than a temporary position," within the meaning of the Act. He is not, therefore, entitled to an order requiring reinstatement at the hands of the respondents, nor to recover any damages from them.

The petition is dismissed.