STATE *ex rel.* JACK L. CHRISTIAN, *Sheriff*, McDOWELL COUNTY, *et al., etc.*

*v.*

E. L. ST. CLAIR, *President, etc.,* COUNTY COURT OF McDOWELL COUNTY

(No. 12803)

Submitted February 18, 1969.     Decided March 4, 1969.

Dissenting Opinion April 2, 1969.

*Robert D. Bailey, Harry J. Capehart, Jr.,* for relators.

*Henry C. Bias, Jr.,* for respondent.

BERRY, JUDGE:

This is a proceeding in mandamus instituted in this Court to compel the respondent, E. L. St. Clair, President of the County Court of McDowell County, to sign the several checks or warrants for the payment of services performed by the petitioners Barbara Moore, Leonard Bolt, Jackie Frederick, George Deskins, Ronnie Mathis, Roy Smith, Gerald Smith and Charles Lawson as deputies of Jack L. Christian, Sheriff of McDowell County, from January 7, 1969 through January 31, 1969. A rule to show cause was issued by this Court on February 10, 1969 returnable February 18, 1969 at which time it was submitted for decision of this Court on arguments and briefs.

The facts in this case are relatively simple and are not disputed. On January 1, 1969 the petitioner Jack L. Christian, the duly elected sheriff of McDowell County, appeared before the County Court of McDowell County and submitted a written list containing the names of twenty individuals whom he desired to appoint as deputy sheriffs of McDowell County, West Virginia, with their salaries fixed by him within the appropriation contained

in the budget and approved by the county court, and he requested the consent of the county court to such appointments in accordance with the provisions of Chapter 6, Article 3, Section 1 (a) (2), as amended.

The county court by order entered January 1, 1969 consented to the appointment of eleven of those appearing on the list submitted by the sheriff as said deputies, deferred action on its consent to the appointment of one of the deputies until a later date, but failed to consent to the appointment by the sheriff of eight of the individuals, petitioners herein, whose names appeared on the list of appointments submitted by him to the county court, the selection of those eight having been blocked because a motion to consent to appointment received no second.

On January 7, 1969 the petitioner Jack L. Christian, sheriff of McDowell County, requested the Circuit Court of McDowell County to assent to the appointment of the eight deputy sheriffs, petitioners herein, for temporary service or duty, in accordance with the provisions of Code, 6-3-1 (a) (3), as amended. The reason given for the request for the assent of the circuit court for such appointments was that the failure of the county court to consent to the appointment of the eight deputies here in question left the office of the sheriff without a sufficient number of experienced officers and persons capable of performing duties of deputies in the respective capacities in which they would be used, and thereby created a condition impeding police work in the county and impeding the conduct of the sheriff's office work.

The Circuit Court of McDowell County, after finding that public interest required the assent to the appointments requested by the sheriff, assented to the appointment of the eight deputies, with the salaries fixed by the sheriff within the appropriation for such payment approved on a preceding budget by the county court, for the performance of temporary service or duty to serve

at the will and pleasure of the sheriff of McDowell County.

After the order was entered by the circuit court assenting to the appointment of the eight deputies involved in this proceeding, each of them qualified to perform such service or duty by taking the proper oath of office and executing proper bonds required by the sheriff in such cases, all of which were approved and confirmed by the county court in an order of the court entered January 7, 1969.

On January 31, 1969 the clerk of the county court drew orders or warrants on the county funds, which were also signed by the sheriff, directing the McDowell County Bank to pay such orders but the respondent refused to sign these orders.

The respondent filed a demurrer and answer to the petition in which it was contended that the action on the part of the circuit court in assenting to the appointments of the petitioners as deputies, in accordance with the provisions of Code, 6-3-1 (a) (3), as amended, constituted the performance of a non-judicial function by the circuit court and violated the provisions of Section 1 of Article V of the Constitution of West Virginia, dealing with the separation of powers, which reads as follows: "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature." The answer of the respondent denied that the petitioners Barbara Moore, Leonard Bolt, Jackie Frederick, George Deskins, Ronnie Mathis, Roy Smith, Gerald Smith and Charles Lawson were legally appointed deputies of the sheriff but admitted that each of said petitioners took the oath of office of deputy sheriff of McDowell County and gave bond, which was approved and confirmed by the county court as re-

quired· by law, all of which was done upon the advice of the prosecuting attorney of McDowell County, and the answer admitted that all of the petitioners above have been acting and serving as deputy sheriffs from January 7, 1969 through January 31, 1969.

It is contended by the respondent that although the petitioners were appointed deputy sheriffs they were appointed to perform temporary service or duty, that there was no specific time as to the length for the temporary duty or services to be performed, and that inasmuch as they were to serve at the will and pleasure of the sheriff such appointments would be indefinite and of a permanent nature and therefore would allow the sheriff of McDowell County to do by indirection that which he could not do directly and would result in the failure of the county court to consent to said appointments being rendered meaningless.

In the case of *Hockman* v. *Tucker County Court,* 138 W. Va. 132, 75 S. E.2d 82, it was held that a sheriff can not compel the county court to consent to the appointment of his deputies. In that case the sheriff appointed a deputy who· accepted the appointment, executed the bond and entered into the performance of his duties as deputy sheriff. The county court met at a regular session after the appointment and a motion for the consent to or approval of the appointment was not considered or adopted as in the case at bar, but at the same time, unlike it, no action was taken to approve the bond which was executed by the deputy who had been appointed. Later, at a special session of the county court in the *Hockman* case a motion was made to disapprove the appointment of the deputy which was adopted by a vote of two to one. At the same time a motion was made to pay the salary of the deputy who had been appointed and had performed the duties as deputy from the 1st to the 24th of January which was adopted by a unanimous vote and he was paid for the service or duty he had performed. It was held in point 2 of the syllabus of the *Hockman* case that: "The

county court has the positive authority to consent or to refuse to consent to an appointment by the sheriff of his deputy and its action in exercising such authority is not subject to judicial direction or control."

In discussing the question involved in the *Hockman* case, a question similar to the one presented here, this Court said:

"Article VIII, Section 24, of the Constitution of West Virginia relating to county courts to the extent here pertinent provides that 'They shall also, under such regulations as may be prescribed by law, have the superintendence and administration of the internal police and fiscal affairs of their counties, * * *.' Section 1, paragraph (a) (2), Article 3, Chapter 6, Code, 1931, as amended, is in this language: 'A sheriff, surveyor of lands, or assessor may, with the consent of the county court duly entered of record, appoint any person or persons his deputy or deputies.' The paragraph just quoted prescribes no qualifications for any person appointed as any such deputy. Paragraph (a) (3), of the same section, article and chapter is expressed in these terms: 'A sheriff, when in the opinion of the judge of the circuit court the public interest requires it, may, with the assent of said court, duly entered of record, appoint any person or persons his deputy or deputies to perform temporary service or duty.' By the first quoted provision of the statute the Legislature vested in the sheriff the authority to appoint his deputy and in the county court the authority to consent or not to consent to such appointment. By Section 2 of the same article and chapter, it also gave the power to the sheriff to remove his deputy, without cause, and the power to the county court or other tribunal by and with whose consent the deputy was appointed for good cause shown to remove, or revoke the appointment or the confirmation of, any such deputy. It is clear that in enacting the foregoing statutory provisions the Legislature had in mind the possibility that in exercising its authority to consent to an appointment by the sheriff of his deputy the county court might refuse to give its consent

and that, in the event that situation should materialize, the sheriff in protecting the public interest could, with the assent of the circuit court, appoint his deputy or deputies to perform any temporary service or duty."

The issue in the *Hockman* case was to compel the county court to confirm or consent to the appointment of a deputy appointed by the sheriff for a permanent appointment or for an indefinite period of time under the provisions of Code, 6-3-1 (a) (2), as amended, and did not involve the assent of a circuit judge to the appointment of a deputy to perform temporary service or duty under the provisions of Code, 6-3-1 (a) (3), as amended, and therefore the statements in the *Hockman* case with regard to this latter section are only dicta. However, in the *Hockman* case the county court had unanimously approved the payment of the salary of the deputy for the service he had performed before the county court disapproved the appointment, which is the only issue involved in the instant case. There has never been here any affirmative disapproval by the county court of the appointments made by the sheriff under the provisions of Code, 6-3-1 (a) (2), as amended. In fact, the county court approved the oath of office taken by each deputy in question and the bonds executed by them before they entered into the performance of their duties.

However, the approval of the oaths of office and bonds of the eight deputies by the county court was only for the appointment to perform temporary service or duty. The appointment for permanent service or duty under Code, 6-3-1 (a) (2), as amended, has never been approved by the county court, and therefore such appointment is not complete as the county court has a veto power over such appointment. *Wintz* v. *Board of Education of Charleston District,* 28 W. Va. 227; *Broadwater* v. *Booth,* 116 W. Va. 274, 180 S. E. 180; *Hockman* v. *Tucker County Court, supra.* Any appointment of a deputy made by the sheriff is at his will and pleasure whether it be permanent or temporary. Code, 6-3-2, as amended. The appointment

in question in the case presented here is for temporary service or duty only and the statement in the order of the circuit court assenting to such appointment, that said deputies are to serve in accordance with the law and at the will and pleasure of the sheriff, pertains only to the appointments for temporary service and merely meant that the sheriff in accordance with the provisions of Code, 6-3-2, as amended, could remove any of the deputies at his will and pleasure during such temporary service. The circuit court order could not be construed to mean that such appointment was for an indefinite period of time. Under the appointment involved in the case at bar the eight deputy sheriffs, petitioners herein, can not serve as such for an indefinite period. Although the time of such temporary service is not fixed, in any event it can only be for a reasonable time during which their services are needed for the proper performance of duties of the sheriff's office and for the protection of the public in McDowell County. In the event the county court of McDowell County fails to consent to the original appointments for permanent service or duty either in connection with the original submission of the names of the eight petitioners or on a resubmission thereof, new appointments by the sheriff for permanent service no doubt would be required. See *Broadwater* v. *Booth, supra.*

It was held in the case of *State ex rel. Richardson* v. *County Court of Kanawha County,* 138 W. Va. 885, 78 S. E.2d 569, that a court could not fix the salaries of its probation officers and compel the county court to correct the annual budget for such court to provide for the payment of the specified sum for such salaries. There is an entirely different situation in the case at bar. The sheriff in appointing the deputies fixed the salaries within the budgetary limitations approved by the county court for such purposes. The case of *Cahill* v. *Perrine,* 105 Ky. 531, 49 S. W. 344 and 20 Ky. L. 1454, 1656, 50 S. W. 19, dealt with a somewhat similar situation to the one presented here. In that case the temporary appointments by a

circuit judge of guards to conserve the peace was approved where it was provided that the temporary appointments would be for thirty-day periods. A temporary position is for a limited time in contrast to a permanent one which is for an indefinite time. See *Winborn* v. *Tyler,* 231 Miss. 166, 94 So. 2d 340 and *Mouell* v. *Local No. 7635,* D. C. W. Va., 81 F. Supp. 151.

Inasmuch as the only question involved in the case presented here is the payment of the eight petitioners for their services performed as deputy sheriffs of McDowell County, from January 7 through January 31, 1969, and their oaths and bonds as required by law have been approved by the county court for such temporary service and as the result they became de jure officers in the performance of the duties and services during such time, it is not necessary in the decision of this case to consider or determine the constitutional question with regard to the division of powers raised by the respondent in his demurrer and answer, which is contained in Article V, Section 1 of the Constitution relative to the statute in question, Code, 6-3-1 (a) (3), as amended. When it is not necessary in the decision of a case to determine the question of constitutionality of a statute this Court will not consider or determine such question. *Norris* v. *Cabell County Court,* 111 W. Va. 692, 163 S. E. 418; *State* v. *Garner,* 128 W. Va. 726, 38 S. E.2d 337; *State* v. *Harrison,* 130 W. Va. 246, 43 S. E.2d 214; *State ex rel. Titus* v. *Hayes, Sheriff,* 150 W. Va. 151, 144 S. E.2d 502.

After a public officer has rendered service such as the de jure deputy sheriffs involved in the case at bar he can not be deprived of his right to compensation for the services rendered. 16 C.J.S., Constitutional Law, §317.

For the reasons stated herein the demurrer of respondent is overruled, and the writ prayed for to compel the respondent, E. L. St. Clair, President of the County Court of McDowell County, to sign the order or warrants for the payment of services performed by the petitioners Barbara Moore, Leonard Bolt, Jackie Frederick, George

Deskins, Ronnie Mathis, Roy Smith, Gerald Smith and Charles Lawson, as deputy sheriffs of McDowell County, is granted.

*Writ granted.*

CALHOUN, JUDGE, dissenting:

Respectfully, I dissent. By a process of reasoning which I consider obscure and unsound and by adroitly avoiding a decision of the constitutional question which is the threshold and basic question presented by pleadings, briefs and oral argument, the Court has placed its stamp of approval upon an unbecoming maneuver which has resulted in that which I believe to be an unlawful and unconstitutional circumvention of a fundamental and exclusive prerogative of the County Court of McDowell County. That prerogative heretofore has been firmly buttressed by constitutional and statutory provisions and by prior decisions of this Court.

By Article VIII, Section 24 of the Constitution of West Virginia, county courts are charged with powers and responsibilities respecting the internal police and fiscal affairs of their counties. Sheriff Christian undertook the appointment of twenty deputies pursuant to the provisions of Code, 1931, 6-3-1 (a) (2), which requires the concurrence or joint action of the sheriff and the county court in order that deputies may be lawfully appointed. The statute is as follows: "A sheriff, * * * may, with the consent of the county court duly entered of record, appoint any person or persons his deputy or deputies."

*Hockman* v. *The County Court of Tucker County,* 138 W. Va. 132, 75 S. E.2d 82, involved a mandamus proceeding by a sheriff to compel the county court to give its consent to the appointment of a deputy sheriff after the county court, by a two to one vote, had refused to give its consent to the appointment. The second and third points of the syllabus of that case are as follows:

"2. The county court has the positive authority to consent or to refuse to consent to an appointment by the sheriff of his deputy and its

action in exercising such authority *is not subject to judicial direction or control*. (Italics supplied.)

"3. In the exercise of its authority to consent or to refuse to consent to the appointment by the sheriff of his deputy, the county court may refuse to consent to such appointment without expressing any reason for such refusal."

On January 1, 1969, Sheriff Christian submitted to the county court a list in writing of the names of twenty persons whom he desired to have appointed as his deputies at proposed monthly salaries set opposite their several names, and requested the county court's "approval" of the proposed appointments. The proposed monthly salaries ranged in amounts from $356 to $548. Code, 1931, 7-7-7, as amended, confers upon a sheriff the exclusive power to fix the amount of compensation of his deputies within the aggregate sum allotted by the county court for such purposes. In other words, the county court has the exclusive right to approve or to disapprove the appointments of deputies pursuant to Code, 1931, 6-3-1 (a) (2), and the sheriff has the exclusive right to fix their compensation. A circuit court has no power or jurisdiction in relation to either of such functions.

When the list of twenty names of proposed deputies was submitted to the county court on January 1, 1969, the county court, by a two to one vote of the three commissioners, approved the list of names submitted with the exception of the eight persons who are involved in the present case and action was deferred in relation to one of the twenty persons named until the next meeting of the county court. Thereupon, Commissioner Camper moved that the eight persons be approved by the county court. This motion died for want of a second. The majority opinion states that the county court "failed to consent to the appointment by the sheriff of eight of the individuals, * * *." On the contrary, the order of the county court, when read in its entirety, discloses clearly that the county court refused to approve the appointment of the eight persons in question.

The majority opinion states, as though it were legally significant, that there has never been "any affirmative disapproval by the county court of the appointments made by the sheriff under the provisions of Code, 6-3-1 (a) (2), as amended." I believe this statement is wholly unsupported by the record. The county court has strenuously contended in this very proceeding that the eight persons have never been legally appointed as deputies, either on a permanent basis or on a temporary basis. In any event, the statute in question does not contemplate that the county court's approval may legally result from its inaction or the absence of an "affirmative disapproval", whatever the quoted expression may mean. The statute, on the contrary, requires the affirmative "consent of the county court duly entered of record, * * *."

Clearly, the county court refused and continues to refuse to give its consent to the appointment of the eight persons in question. If Code, 1931, 6-3-1 (a) (2), means anything, as construed by this Court in the *Hockman* case, it means that the county court has a plenary and absolute right to refuse to give its consent to the appointment of proposed deputies; that such a refusal "is not subject to judicial direction or control"; and that such persons cannot be legally appointed in any manner as deputies by any person or tribunal, unless upon reconsideration by the county court which previously refused to consent to the appointments.

The record clearly discloses that the county court did not act arbitrarily or capriciously in considering the propriety of consenting to the appointment of the twenty persons as deputies. "A public official, in the performance of official duties imposed upon him by law, is presumed to have done his duty and to have acted in good faith and from proper motives until the contrary is shown." *State of West Virginia* v. *Professional Realty Company*, 144 W. Va. 652, 662-63, 110 S. E.2d 616, 623. We must assume that the county court acted upon considerations of fitness, propriety and in the public interest in the

exercise of its plenary, discretionary right. It refused to give its approval to only eight of the twenty persons proposed or appointed by the sheriff. Nevertheless, this Court has approved that which cannot reasonably be construed other than as a judicial review by the circuit court of the county court's exercise of discretion in refusing to give its consent to the appointment of eight persons as deputies.

If Sheriff Christian desired that additional deputies be appointed, his clear duty under the law was to submit to the county court additional nominations of persons other than the eight. On the contrary, the course pursued by the sheriff has the appearance of a bold, transparent maneuver to deprive the county court of its right to exercise its prerogative.

On January 7, 1969, Sheriff Christian presented an ex parte petition to the Circuit Court of McDowell County, pursuant to Code, 1931, 6-3-1 (a) (3), which is as follows: "A sheriff, when in the opinion of the judge of the circuit court the public interest requires it, may, with the assent of said court, duly entered of record, appoint any person or persons his deputy or deputies to perform any temporary service or duty." It will be noted that the statutory language quoted immediately above is a part of the same chapter, article and section of the Code as is the provision previously quoted in this opinion under which the sheriff undertook to obtain the consent of the county court to the appointment of the twenty persons as deputies.

The petition presented to the circuit court listed the names of the same eight persons whose proposed appointments had been disapproved by the county court, and after the name of each of the eight persons so listed, there appeared a suggestion of the same salary as was indicated in the petition previously presented to the county court.

The petition to the circuit court does not allege that

the county court acted arbitrarily, capriciously or unlawfully in rejecting the appointment of the eight persons in question, nor does it allege any basis of a showing that "the public interest requires" that the circuit court give its assent to the appointment of the eight persons other than an alleged hardship resulting to the sheriff and to the public from the refusal of the county court to consent to the appointment of the same eight persons. In the prayer of the petition to the circuit court, Sheriff Christian states that "he hereby appoints the following named persons as tax collecting deputies to hold office *at his will and pleasure,* effective January 7, 1969, at the salaries per month fixed in the amounts set opposite their respective names, * * *." (Italics supplied.)

The circuit court order, entered in the ex parte proceeding held on January 7, 1969, recites that the court "does hereby find that the public interest requires" that deputies be appointed "to perform temporary services and duties". Thereafter the order states that the court "does hereby assent to the appointments" of the eight persons by the sheriff "to act as his deputies to perform temporary duties and services * * * said deputies to serve in accordance *in* law and *at the will and pleasure of the Sheriff of McDowell County, West Virginia, at the salaries per month set opposite their respective names, * * *."* (Italics supplied.) On the same day (January 7, 1969) the county court entered an order by which it "approved and confirmed the bonds and oaths" of the eight persons named. The bonds and oaths designate the eight persons as tax collecting deputies for Sheriff Christian. There is nothing whatsoever in the county court's order to indicate that it approved the appointment of such eight persons as deputies. The validity or invalidity of the appointments depends wholly on the action of the circuit court.

The majority opinion makes the following statement which involves some sort of obscure or inverse reasoning which I cannot comprehend: "Inasmuch as * * * their

oaths and bonds as required by law have been approved by the county court for such temporary service and as the result they became de jure officers in the performance of the duties and services during such time, it is not necessary in the decision of this case to consider or determine the constitutional question with regard to the division of powers raised by the respondent in his demurrer and answer, * * *."

The constitutional question raised by the respondent involves Article V of the Constitution of West Virginia which is in part as follows: "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; * * *."

The constitutional "separation of powers" provision is the very basis of my view, and of the respondent's contention, that the eight deputies are *not* de jure officers. The basis of the respondent's refusal to pay the eight deputies is that they were not constitutionally appointed and therefore that they are not de jure officers. The Court, in the majority opinion, has arrived at the conclusion that the constitutional question does not arise because the eight persons are de jure officers. I earnestly maintain, as does the respondent, that we must first determine whether the eight persons have been constitutionally appointed. A decision of that pivotal question will determine whether the eight persons are de jure officers and therefore entitled to demand compensation for their services.

If the eight persons are merely de facto officers, their acts as such are binding as to third persons and the public; but a mere de facto officer is not entitled to demand any compensation or other personal benefits from acting in that capacity. *Calley v. Blake*, 126 W. Va. 696, 701-02, 29 S. E.2d 634, 636; *Rowan v. Board of Education of Logan County*, 125 W. Va. 406, pt. 2 syl., 24 S. E.2d 583; *Norris v. Gilmer*, 183 Va. 367, 32 S. E.2d 88. Whether the eight persons are entitled to demand compensation for their

services, therefore, requires an initial determination whether they are de jure officers; and that, in turn, under the pleadings, facts and circumstances of this case, requires a determination whether they have been appointed in violation of constitutional principles.

The respondent's demurrer to the mandamus petition asserts that the action of the circuit court constituted performance of a nonjudicial function in violation of the "separation of powers" provision of Article V of the Constitution of West Virginia. The same question is raised by the respondent's answer to the mandamus petition. The answer further asserts, by way of defense, that the action of the circuit court rendered meaningless the authority of the county court to refuse to consent to the appointment of the eight persons as deputies, thereby permitting the sheriff to accomplish by indirection that which he could not do directly; that the order of the circuit court did not specify, define or limit the length of time "temporary duties and services" could be performed lawfully by the eight persons allegedly appointed as deputies; and that in this respect the circuit court improperly and illegally provided a means of circumventing the action of the county court in refusing to consent to the appointment of the eight persons in question as deputies.

I am of the opinion that the portion of the statute under which the circuit court assumed to act is unconstitutional; and that, irrespective of the constitutionality of that portion of the statute, the action of the circuit court is void because it involved the performance of nonjudicial functions. These two questions are interrelated and therefore I will discuss them together.

The constitutional question involving the validity of the statute in question, and the action of the circuit court performed pursuant to that statute, involve not only the inhibitory character of the "separation of powers" provision of Article V, but also the positive character of Article VIII, Section 24 of the Constitution of West Vir-

ginia which expressly confers upon county courts powers and responsibilities respecting the internal police and fiscal affairs of the counties.

It is clear from many prior decisons of this Court that a statute may be unconstitutional only in part, and that, if the unconstitutional portion is distinct and separable, its constitutional invalidity will not affect the validity of the remainder of the statute. I believe the portion of the statute under which the circuit court assumed to act is clearly distinct and separable and that a declaration of its invalidity would not affect the validity of the remainder of the statute. *State ex rel. State Building Commission* v. *Bailey,* 151 W. Va. 79, 93-94, 150 S. E.2d 449, 457.

*State ex rel. Richardson* v. *The County Court of Kanawha County,* 138 W. Va. 885, 78 S. E.2d 569, involved the constitutionality of an act of the legislature which undertook to authorize the judge of the Domestic Relations Court of Kanawha County to fix the amounts of salaries of certain employees whom the statute authorized that court to appoint. The judge of the domestic relations court, pursuant to that statute, entered an order fixing salaries of a chief probation officer, three assistant probation officers and two secretaries. The county court refused to recognize the validity of the action of the domestic relations court in undertaking to fix the amounts of such salaries on the ground that, in that respect, the legislature undertook to confer upon the domestic relations court powers which were nonjudicial in character and that, in this respect, the statute was violative of the "separation of powers" provision of the Constitution previously quoted in this dissenting opinion.

The judge of the domestic relations court instituted in this Court a proceeding in mandamus to require the county court to make proper budgetary provision for payment of the salaries in question. This Court upheld the contention of the county court. It declared the statute to be unconstitutional and void to the extent that it under-

took to confer nonjudicial powers upon the domestic relations court in relation to the fixing of the amounts of salaries, and, therefore, the writ of mandamus prayed for was denied. The unanimous opinion of the Court in that case was written by the late Judge Leslie E. Given, who must be regarded, certainly by judges who had the privilege of serving with him, as one of the most studious and scholarly judges ever to have served on this Court. The opinion prepared by him in the *Richardson* case is doubtless the outstanding opinion of this Court in relation to constitutional questions such as that presented for decision in the present case. The opinion exhaustively refers to prior pertinent decisions of this Court and of other appellate courts.

I confidently rely upon the opinion in the *Richardson* case as ample authority for my contention that the Circuit Court of McDowell County undertook to perform nonjudicial functions in this case, and that the portion of the statute which formed the basis of such action of the circuit court is unconstitutional. The opinion in the *Richardson* case refers specifically to prior decisions of this Court in which the Court held unconstitutional a statute which undertook to vest in certain courts power to revoke licenses granted for the sale of nonintoxicating beer; a statute which undertook to empower circuit courts to supervise the sale of forfeited and delinquent lands administratively rather than judicially; a statute providing for confirmation by circuit courts of sales made under deeds of trust; a statute which vested in the Public Service Commission power to issue licenses to construct dams and provided for appeal from the action of that body and a trial de novo by the Circuit Court of Kanawha County; a statute which provided for the fixing by county courts of salaries to be paid to clerks of circuit courts, deputies and other employees, and for appeal to the circuit court with authority in such a circuit court to fix reasonable and just compensation to be paid as salaries for such deputies and assistants; and a similar act,

involved in another case, relating to salaries and expenses to be paid to sheriffs' deputies.

The question of "separation of powers" is ably discussed in *State ex rel. County Court of Marion County* v. *Demus,* 148 W. Va. 398, 401, 135 S. E.2d 352, 355. In the recent case of *State ex rel. Canterbury* v. *The County Court of Wayne County,* 151 W. Va. 1013, 158 S. E.2d 151, the Court held that the provisions of Code, 1931, 7-7-7, as amended, confer on a county court a discretionary power and duty to fix an aggregate sum to be expended during a fiscal year for compensation of deputies appointed by sheriffs, clerks of county courts and trial courts; that the power thus conferred on county courts is administrative and not judicial in character; and that a circuit court can not constitutionally review the action of a county court in fixing an aggregate sum to be expended during a fiscal year by a clerk of a county court as compensation of his deputies and assistants, in the absence of arbitrary action on the part of the county court in the exercise of its discretion in fixing such aggregate sum. The opinion in the *Canterbury* case contains a review of legal and constitutional principles and of prior decisions of this Court which are quite pertinent to the constitutional question presented for decision in the present case.

The opinion in the *Richardson* case (138 W. Va. at 895, 78 S. E.2d at 575) quotes with approval the following statement from a California case, which previously had been quoted with approval in the case of *Hodges* v. *Public Service Commission,* 110 W. Va. 649, 159 S. E. 834: "The question of what the public convenience requires is a political, not a legal one." *Fall* v. *Sutter Co.,* 21 Cal. 237. I believe this statement, approved in the two prior opinions of this Court, is authority for the proposition that the legislature cannot constitutionally confer on a circuit court the nonjudicial function of determining that "the public interest requires" the appointment of persons to act as a sheriff's deputies.

To the extent, if any, that the circuit court undertook to fix or to approve the salaries of the eight persons, the court was clearly performing a nonjudicial function. My basic contention, however, is that the approval or disapproval of the appointment of a sheriff's deputies is clearly a nonjudicial function and that for this reason the portion of the statute here in question is unconstitutional.

Wholly aside from the constitutionality of the statute, the action of the circuit court is void for the reason that it did not undertake, in conformity with the statute, to give its assent to the appointment of the eight persons as deputies merely to perform "temporary" service or duty. Rather the circuit court's order recites that the court assents to the appointment by the sheriff of the eight persons to serve as deputies in accordance with law "and at the will and pleasure of the Sheriff * * *." This sweeping language is definitive and explanatory of that which the court's order had previously referred to as "temporary duties and services." The deputies appointed with the approval of the county court likewise serve at the will and pleasure of the sheriff. At the time this dissenting opinion is being written, almost three months have passed since the order was entered by the circuit court. This Court, from subsequent legal proceedings before the Court in relation to that order, has every reason to know that the eight persons are still serving "at the will and pleasure of the Sheriff of McDowell County."

This case involves a mandamus proceeding to require payment of compensation to the eight persons for services only during the period of January 7-31. The respondent as president of the county court has no basis or guideline for determining when the "temporary" period of appointment ended, or when it will end. Did it end as of January 31, the last day of the period in question in this case? If not, did it end February 15, or February 28, or March 15? Or does the "temporary" period continue, as the cir-

cuit court's order states "at the will and pleasure of the Sheriff * * *" and, therefore, conceivably for the duration of the sheriff's four-year term of office? Must the county officials, who are charged with the responsibility of paying the sheriff's deputies all that is due them, *and no more,* determine at their own risk when the "temporary" period ended or will end?

The circuit court by its order assented to the appointment of the eight persons for an indefinite period of time, a period of time without any ascertainable limit, so long as it suits the "will and pleasure" of the sheriff. This Court has said that the eight persons are appointed for a period of "temporary service". Unfortunately for the respondent and other county officials charged with administration of the fiscal affairs of the county in a legal manner, they are still bound by the sweeping, indefinite mandate of the circuit court.

I would deny the writ prayed for in this mandamus proceeding on the ground that the action of the Circuit Court of McDowell County is void because that court undertook to perform nonjudicial functions; and I would also hold that the portion of the statute under which that court assumed to act is unconstitutional.

I am authorized to state that Judge Browning concurs in the views expressed in this dissenting opinion.